UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DAVID R. O'FLYNN, KENNETH NOVAK,           )
DONALD L. WILHOLD, and JAMES ADDISON, *on*  )
*behalf of themselves and others similarly*  )
*situated*,[1]                              )
                                            )       No. 1:22-cv-00335-JMS-MG
                 *Plaintiffs*,              )
                                            )
              *vs.*                         )
                                            )
PHH MORTGAGE CORPORATION, OCWEN             )
FINANCIAL CORPORATION, and ALTISOURCE       )
SOLUTIONS, INC.,                            )
                                            )
                 *Defendants*.              )

## ORDER

Plaintiffs David O'Flynn, Kenneth Novak, Donald Wilhold, and James Addison have filed

an Adversary Proceeding in the United States Bankruptcy Court for the Southern District of

Indiana (the "Bankruptcy Court") against Defendants PHH Mortgage Corporation ("PHH"),

Ocwen Financial Corporation ("Ocwen"), and Altisource Solutions, Inc. ("Altisource").[2] [*O'Flynn*

*v. PHH Mortgage Corp., et al.*, Adversary No. 21-50079 (S.D. Ind. Bk. Ct.) (the "Adversary

Proceeding"); Filing No. 19 at 26-90.] Mr. O'Flynn and Mr. Addison were debtors in Chapter 13

cases filed in the Bankruptcy Court, Mr. Novak was a debtor in a Chapter 13 case filed in the

United States Bankruptcy Court for the Northern District of Indiana, and Mr. Wilhold was a debtor

in a Chapter 13 case filed in the United States Bankruptcy Court for the Southern District of

---

[1] The Clerk is **DIRECTED** to update the docket by: (1) terminating Regina Addison as a Plaintiff and adding Kenneth Novak as a Plaintiff; and (2) changing Defendant "Altisource Portfolio Solutions, SA" to "AltiSource Solutions, Inc." The corrections are necessary pursuant to the filing of the First Amended Class Action in the Bankruptcy Court. [*See* Filing No. 19 at 26-90.]

[2] Plaintiffs allege that PHH is a wholly-owned subsidiary of Ocwen. [Filing No. 19 at 30.] For simplicity, in this Order the Court refers to Ocwen and PHH collectively as "Ocwen."

Illinois.  Plaintiffs allege in their Amended Complaint that Defendants engaged in fraudulent practices in connection with the servicing of home mortgage loans owed by individuals in Chapter 13 bankruptcy proceedings, and assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), and various state laws, and that Defendants violated the Bankruptcy Court's discharge injunction and automatic stay.  [Filing No. 19 at 69-87.]  Defendants filed Motions to Dismiss, [Filing No. 2-3; Filing No. 2-6], and the Bankruptcy Court issued a Partial Dismissal and Report and Recommendation Regarding Defendants' Motion[s] to Dismiss (the "Report and Recommendation"), [Filing No. 15].  Ocwen has filed Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law (the "Objection"), which is now ripe for the Court's review.  [Filing No. 16.]

## I.
### STANDARD OF REVIEW

Federal Rule of Bankruptcy Procedure 9033 governs reports and recommendations from a bankruptcy court to a district court, and provides:

> The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

*See also* 28 U.S.C. § 157(c)(1) (district court shall enter a final order or judgment after "considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected").[3]

## II.
### BACKGROUND

### A.      Plaintiffs' Claims

Plaintiffs, all debtors in Chapter 13 bankruptcy cases, categorize their case as follows:

This case concerns fraudulent practices committed by Ocwen and [Altisource] in connection with the servicing of home mortgage loans generally but with an emphasis upon those involved in Chapter 13 bankruptcy proceedings. Specifically, Defendants have engaged in a common scheme involving the creation and collection of improper fees, costs, charges and other amounts in circumvention of the protections afforded to debtors by the Bankruptcy Code. This scheme has resulted in countless borrowers and debtors like the Plaintiffs completing the rigid requirements of a Chapter 13 bankruptcy only to be denied the "fresh start" to which they were entitled.

---

[3] The Bankruptcy Court previously filed a Recommendation to the District Court to Withdraw the Reference Pursuant to Local Rule B-5011-1(b), [Filing No. 1], and this Court rejected the Recommendation, noting that while the bankruptcy judge generally submits proposed findings of fact and conclusions of law to the district court where a case is a non-core proceeding but is otherwise related to a case under Title 11, "[w]ith the consent of all parties, the district court may refer a proceeding related to a cause under Title 11 to a bankruptcy judge to hear, determine, and enter appropriate orders and judgments." [Filing No. 13 at 6-7 (citing 28 U.S.C. § 157(c)(2) and *Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665, 678-79 (2015)).] Implied in this Court's rejection of the Recommendation was the finding that the non-core claims in this case are "related to" the core claims – *i.e.*, violation of the discharge injunction and the automatic stay. In its Report and Recommendation, the Bankruptcy Court stated that "[t]he so-called 'non-core' claims are not 'related to' the bankruptcy cases," that it did not believe it has "'related to' jurisdiction" over the non-core claims, and that the parties may not consent to jurisdiction, but that it "dutifully follows the District Court's directive to hear and decide the motions to dismiss" and "does so in the form of a report and recommendation given the jurisdictional uncertainty." [Filing No. 15 at 5-6.] The Court appreciates the Bankruptcy Court's difference of opinion and its careful and reasoned consideration of the jurisdictional issue. Moreover, it finds that the Bankruptcy Court's approach of issuing a Report and Recommendation, rather than issuing an opinion and entering judgment, alleviates any jurisdictional concerns because the parties have had an opportunity to object to the Report and Recommendation and this Court is reviewing the Report and Recommendation and deciding the pending Objection *de novo*.

[Filing No. 19 at 27.]

Plaintiffs allege that when home mortgagers fall behind on their payments, Ocwen assesses late fees and "obtains ancillary services which are purportedly designed to protect the lender's interest in the property and permitted by the underlying mortgage and note." [Filing No. 19 at 27.] They allege that to do so, Ocwen "historically funneled all of the work through [Altisource] who then ordered the services using a network of third-party vendors." [Filing No. 19 at 27.] Plaintiffs allege that Altisource "marked up the third-party vendors' charge for their services, and then passed along the charges to Ocwen," and that Ocwen, "[w]ithout obtaining verification the services were permitted by the underlying loan (or actually provided), or without notifying the Bankruptcy Court…collected and continues to seek to collect 'reimbursement' for these services via alleged escrow deficiencies, alleged payment delinquencies, and unilaterally increased principal balances." [Filing No. 19 at 28.] They claim that in order to execute this scheme, Ocwen used a program provided by Altisource called REALServicing even though it and Altisource knew "of REALServicing's inherent deficiencies." [Filing No. 19 at 28.]

Plaintiffs set forth four claims against various combinations of Defendants under RICO, the FDCPA, and RESPA; a claim for violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 14-5-0.5, *et seq.* ("IDCSA"); a claim for violation of the Indiana Home Loan Practices Act, Ind. Code § 24-9-1, *et seq.* ("IHLPA"); a claim for unjust enrichment; and a claim for "contempt and sanctions" for violating the discharge injunction provided by 11 U.S.C. § 524(j), violating Fed. R. Bank. P. 3002.1, and violating the automatic stay provided by 11 U.S.C. § 362(a). [Filing No. 19 at 69-87.]

**B.      The Report and Recommendation**

In its Report and Recommendation on Defendants' Motions to Dismiss, the Bankruptcy

Court recommended as follows:

- All of Mr. Wilhold's and Mr. Novak's claims against Ocwen: Grant Ocwen's Motion to Dismiss and dismiss all of Mr. Wilhold's and Mr. Novak's claims against Ocwen other than Count VII (alleging violations of § 524's automatic stay and Fed. R. Bank. P. 3002.1) and "other than those with respect to inaccurate reporting to credit reporting agencies" pursuant to a Notice and Cure Provision in their mortgages.  [Filing No. 15 at 7-13.]

- Counts I and II (RICO claims against all Defendants): Grant the Motions to Dismiss and dismiss Counts I and II.  [Filing No. 15 at 13-20.]

- Count III (FDCPA claim against Ocwen): Grant Ocwen's Motion to  Dismiss as to claims brought by Mr. Novak, but deny its Motion to Dismiss as to claims brought by Mr. O'Flynn, Mr. Wilhold, and Mr. Addison.  [Filing No. 15 at 20-25.]

- Count IV (RESPA claim against Ocwen): Grant Ocwen's Motion to Dismiss as to RESPA claims brought by Mr. O'Flynn, but deny its Motion to Dismiss as to claims brought by Mr. Novak, Mr. Wilhold, and Mr. Addison.  [Filing No. 15 at 26-27.]

- Count V (IDCSA claim against Ocwen): Plaintiffs withdrew their claim against Ocwen based on an "uncured" deceptive act.  As for an IDCSA claim based on an "incurable" deceptive act, grant Ocwen's Motion to Dismiss as to claims brought by Mr. Wilhold, but deny the Motion to Dismiss as to claims brought by Mr. O'Flynn, Mr. Novak, and Mr. Addison.  [Filing No. 15 at 27-32.]

- Count VI (IHLPA claim against Ocwen): Grant Ocwen's Motion to Dismiss as to claims brought by Mr. Wilhold, but deny the Motion to Dismiss as to claims brought by Mr. O'Flynn, Mr. Novak, and Mr. Addison.  [Filing No. 15 at 32-33.]

- Count VIII (unjust enrichment claim against Ocwen and Altisource): Grant the Motions to Dismiss as to all Plaintiffs' claims.  [Filing No. 15 at 40-43.]

- Voluntary Payment Doctrine: Deny Ocwen's Motion to Dismiss because the voluntary payment doctrine is an affirmative defense.  [Filing No. 15 at 43-45.]

As to Count VII, the Bankruptcy Court stated:

[S]ince [the Bankruptcy Court] has subject matter jurisdiction over the discharge injunction violations as to all four named cases, this Court dismisses [Mr.] Novak's and [Mr.] Wilhold's Count VII claims without prejudice and invites them to reopen their bankruptcy cases [which were filed in other districts] and file a sanctions motion against Ocwen for violation of the discharge injunction.  As to [Mr.] O'Flynn and [Mr.] Addison, [the Bankruptcy Court] retains jurisdiction over their request for sanctions against Ocwen for violation of the discharge injunction only and that matter will proceed in [the Bankruptcy Court] in due course.

[Filing No. 15 at 46.]

### C.      The Objection

Ocwen objects to the following portions of the Report and Recommendation:

- The recommendation that its Motion to Dismiss be denied as to claims brought by Mr. O'Flynn, Mr. Novak, and Mr. Addison in Counts V (IDCSA) and VI (IHLPA); and

- The recommendation that its Motion to Dismiss be denied as to claims brought by Mr. Novak, Mr. Wilhold, and Mr. Addison in Count IV (RESPA).

[Filing No. 16.]  Plaintiffs filed a response to the Objection, [Filing No. 17], and Ocwen filed a reply, [Filing No. 18].  Plaintiffs did not file an affirmative objection.  The Court discusses the Objection below.

### III.
### DISCUSSION

### A.      Counts V (IDCSA) and VI (IHLPA) Against Ocwen

#### 1.      *Amended Complaint Allegations*

In Count V, Plaintiffs allege that Defendants "have committed unfair, deceptive, and misleading acts…including…collecting or seeking to collect improper and inflated fees and charges, capitalizing fees and charges they knew to be improper via loan modifications, placing loans in manufactured states of delinquency or default, reporting inaccurate credit information, failing to perform escrow analysis and calculate proper escrow payments, mismanaging escrow

6

funds, failing to send interest rate and payment change notices, and failing to notify Plaintiffs[ ] of alleged escrow shortages and deficiencies." [Filing No. 19 at 81.] Plaintiffs allege in Count VI that Defendants "engaged in one or more deceptive acts" in connection with their mortgage transactions, in violation of the IHLPA. [Filing No. 19 at 83.]

    2.    *Ocwen's Motion to Dismiss*

Ocwen argued in its Motion to Dismiss that all of Plaintiffs' state law claims are preempted by the Bankruptcy Code because they are based on alleged bankruptcy discharge violations. [Filing No. 19-2 at 46-49.] It asserted that the IDCSA claim is based on conclusory allegations that it attempted to collect debts that were improper and inflated because the debts have been discharged and that the IHLPA claims reference unspecified "deceptive acts" but incorporate all of the Amended Complaint's allegations. [Filing No. 19-2 at 48.] Ocwen contended that "because the Complaint's allegations that Defendants violated the IDCSA and the IHLPA stem from alleged violations of bankruptcy discharge injunctions, it is clear that these counts are preempted by the Bankruptcy Code and should be dismissed." [Filing No. 19-2 at 48.] Ocwen also argued that Plaintiffs did not allege that Defendants acted with intent to defraud or mislead as to incurable deceptive acts in connection with their IDCSA claim,[4] and that their IDCSA claim is partially time-barred. [Filing No. 19-2 at 71-72.] It argued further that Plaintiffs do not sufficiently allege an IHLPA claim and that Mr. Wilhold cannot assert IDCSA or IHLPA claims because those statutes do not apply to real estate located outside of Indiana and his real estate is located in Illinois. [Filing No. 19-2 at 72-76.]

---

[4] Ocwen also moved to dismiss Plaintiffs' IDCSA claims based on uncured deceptive acts, [Filing No. 94 in the Adversary Proceeding at 50-52], and Plaintiffs withdrew their IDCSA claims based on uncured deceptive acts in their response brief, [Filing No. 177 in the Adversary Proceeding at 56].

In their response to Ocwen's Motion to Dismiss, Plaintiffs argued that their state law claims are not preempted by the Bankruptcy Code, that preemption only occurs when the Bankruptcy Code and a state law are "inconsistent and unable to coexist," and that "[s]uch a scenario does not exist here." [Filing No. 19-2 at 196-97.] They argued further that they have adequately alleged their IDCSA claim and that it is not time-barred. [Filing No. 19-3 at 31-38.] Plaintiffs did not respond to Ocwen's arguments regarding their IHLPA claim. [*See* Filing No. 19-2 at 177-200; Filing No. 19-3 at 1-44.]

Ocwen reiterated its arguments regarding preemption in its reply brief. [Filing No. 19-3 at 52-53.] It noted that Plaintiffs did not respond to its arguments regarding the IHLPA claim, and argued that Plaintiffs have waived any opposition. [Filing No. 19-3 at 66-67.] It also reiterated its arguments regarding a failure to sufficiently plead the IDCSA claim and the IDCSA claim being time-barred. [Filing No. 19-3 at 67-69.]

### 3.    The Report and Recommendation

In the Report and Recommendation, the Bankruptcy Court recommended granting Ocwen's Motion to Dismiss Mr. Novak's and Mr. Wilhold's IDCSA claims to the extent they are not based on inaccurate reporting to credit reporting agencies because they did not comply with the notice-and-cure provisions of their mortgages. [Filing No. 15 at 45.] It further recommended denying Ocwen's Motion to Dismiss the IDCSA claims based on incurable deceptive acts because Plaintiffs had sufficiently alleged that claim and because they had sufficiently pled fraudulent concealment which tolls the statute of limitations. [Filing No. 15 at 28-31.] Additionally, it recommended granting the Motion to Dismiss as to Mr. Wilhold's IDCSA claim because he is not an Indiana consumer and he does not allege that any part of the parties' transaction occurred in Indiana. [Filing No. 15 at 31-32.] As to Mr. O'Flynn's, Mr. Novak's, and Mr. Addison's IHLPA claims, the

Bankruptcy Court recommended denying the Motion to Dismiss because they had sufficiently alleged that claim, but granting the Motion to Dismiss as to Mr. Wilhold's IHLPA claim because Mr. Wilhold's property is located in Illinois.  [Filing No. 15 at 32-33.]  The Bankruptcy Court did not discuss whether the Bankruptcy Code preempts the IDCSA and IHLPA claims, or whether Plaintiffs had waived any opposition to arguments in support of dismissing the IHLPA claim because they failed to address them in their response brief.  [*See* Filing No. 15.]

4.      *The Objection*

Ocwen objects to the Report and Recommendation as to Counts V and VI, arguing that the IDCSA and IHLPA claims are preempted by the Bankruptcy Code and noting that the Bankruptcy Court recommended dismissal of Plaintiffs' unjust enrichment claim based on preemption because that claim is based on "'fees that were collected by the Defendants…that should have been disclosed in Ocwen's response to the Trustee's Notice of Final Cure Payment and/or in a Notice of Fees, Expenses and Charges,' for which Rule 3002.1(i) and Section 524 provide remedies."  [Filing No. 16 at 3 (quoting Filing No. 15 at 42-43).]  Ocwen argues that the IDCSA and IHLPA claims are also "based on violations of the Bankruptcy Code for which the Code itself and Rules provide other remedies."  [Filing No. 16 at 3 (quotation omitted).]  It notes that the Bankruptcy Court found in the Report and Recommendation that the IHLPA claim is based on "'allegations of…Ocwen's ability to collect fees and charges which were otherwise uncollectible because they had not been disclosed and thus extinguished under the terms of the Plaintiffs' confirmed plans,'" and that the IDCSA claim is based on allegations that Ocwen "'knowingly misrepresented amounts allegedly past due and subject to collection post-bankruptcy by including materially false information in its proofs of claim [and] responses to Notice of Final Cure Payment.'"  [Filing No. 16 at 4 (quoting Filing No. 15 at 30-33).]  Ocwen asserts that the Bankruptcy Code provides remedies for these

alleged wrongs and so the IDCSA and IHLPA claims are preempted.  [Filing No. 16 at 4.]  It notes that the Bankruptcy Court did not address preemption at all in connection with Counts V and VI. [Filing No. 16 at 3.]  Ocwen also argues that the Bankruptcy Court's recommendation that Mr. O'Flynn, Mr. Novak, and Mr. Addison be permitted to maintain IDCSA and IHLPA claims based on inaccurate reporting to credit reporting agencies is erroneous because those claims would be preempted by the Fair Credit Reporting Act ("FCRA").  [Filing No. 16 at 4-5.]

Plaintiffs argue in their response to Ocwen's Objection that Ocwen did not raise the preemption argument in connection with the IDCSA and IHLPA claims in its Motion to Dismiss. [Filing No. 17 at 4.]  They argue that preemption only occurs when the Bankruptcy Code and a state law are inconsistent and unable to coexist, and that is not the case here so their IDCSA and IHLPA claims are not preempted either by the Bankruptcy Code or the FCRA.  [Filing No. 17 at 4-7.]

In its reply, Ocwen argues that "[f]or consistency and correctness, the District Court should apply the same reasoning [as the Bankruptcy Court applied to preemption of the unjust enrichment claim] to dismiss the state-law claims asserted in Counts V and VI to the extent they are also based on alleged violations of the Bankruptcy Code."  [Filing No. 18 at 2.]  It notes that "[t]he parties…appear to agree that the remaining state-law claims may survive only to the extent that they are based on alleged conduct that is 'separate and distinct' from any alleged violation of the Bankruptcy Code," and that this Court should adopt the Report and Recommendation "with that modification." [Filing No. 18 at 2.]  Ocwen argues that it raised the preemption issue in its Motion to Dismiss.  [Filing No. 18 at 2-3.]  It argues further that Plaintiffs did not assert that their IDCSA and IHLPA claims were based on inaccurate credit reporting, but rather the Bankruptcy Court made that finding, and that the FCRA specifically preempts claims based on state laws that

"relat[e] to the responsibilities of persons who furnish information to credit reporting agencies." [Filing No. 18 at 3 (quoting 15 U.S.C. § 1681t(b)(1)(F)).]

     *5.*    *Discussion*

The Court notes at the outset that it **ADOPTS** the Bankruptcy Court's recommendation that Mr. Wilhold's IDCSA and IHLPA claims (which are based on property in Illinois and lack a connection to Indiana) be dismissed and that Mr. Novak's IDCSA claim to the extent it is not based on inaccurate reporting to credit reporting agencies be dismissed because he did not comply with the notice-and-cure provisions of his mortgage; **GRANTS** Ocwen's Motion to Dismiss as to those claims; and **DISMISSES** those claims **WITH PREJUDICE**.[5]  The Court discusses the remaining Plaintiffs' claims below.

     a.    <u>IHLPA Claims</u>

As to the IHLPA claims brought by Mr. O'Flynn, Mr. Novak, and Mr. Addison, the Court notes that Plaintiffs did not address Ocwen's arguments regarding dismissal of those claims in their response brief.  Ocwen specifically pointed out this shortcoming, but the Bankruptcy Court did not address it.  The Court finds that Plaintiffs' failure to respond to Ocwen's arguments related to the IHLPA claims results in waiver.  *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver.").  Accordingly, the Court **SUSTAINS** Ocwen's Objection, **REJECTS** the Bankruptcy Court's Report and Recommendation to the extent that it recommends denying Ocwen's Motion to Dismiss the IHLPA claims brought by Mr.

---

[5] Because any amendment to Mr. Wilhold's IDCSA and IHLPA claims would be futile, the dismissal is with prejudice.  *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (dismissal with prejudice is proper "if it is clear that any amendment would be futile").

O'Flynn, Mr. Novak, and Mr. Addison, **GRANTS** Ocwen's Motion to Dismiss those claims, and

**DISMISSES** them **WITH PREJUDICE**.[6]

> b.     IDCSA Claims

The Bankruptcy Court did not address in its Report and Recommendation whether

Plaintiffs' IDCSA claims are preempted by the Bankruptcy Code, instead focusing only on the

sufficiency of Plaintiffs' allegations and the statute of limitations issue.  [Filing No. 15 at 27-31.]

But Ocwen explicitly argued that the IDCSA claims were preempted.  [*See* Filing No. 19-2 at 48-

49 (in section titled "Plaintiffs' state law claims are preempted by the Bankruptcy Code because

they are also all based on alleged discharge violations," arguing that the IDCSA claims are

preempted because they are "based on conclusory allegations that Defendants attempted to collect

debts that were 'improper and inflated' because they had been discharged").]  Accordingly, the

Court properly considers whether the IDCSA claims are preempted.

State law claims are preempted by the Bankruptcy Code if they "arise under" the

Bankruptcy Code, are "related to" a bankruptcy case, or "arise in" bankruptcy.  *Sylvester v. Select

Portfolio Servicing, Inc.*, 2019 WL 3573577, at *1 (N.D. Ill. Aug. 6, 2019) (citing *In re Repository

Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010)).  "[S]tate-law claims that attempt to govern the

same activity regulated by the Bankruptcy Code are expressly preempted because Congress

intended to occupy the entire field by providing exclusive remedies in the Bankruptcy Code."

---

[6] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend the complaint once as a matter of course in response to a motion to dismiss.  *Brown v. Bowman*, 2011 WL 1296274, at *16 (N.D. Ind. 2011).  The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion."  Here, Plaintiffs could have amended their Amended Complaint to address the arguments Ocwen made in its Motion to Dismiss.  Instead, they chose to have the Court adjudicate the Motion to Dismiss.  The Court is not required to give Plaintiffs another chance to plead their IHLPA claims and, in its discretion, dismisses those claims – and others claims noted below – with prejudice.

*Carter v. HSBC Mortg. Servs., Inc.*, 2016 WL 5121984, at *6 (S.D. Ind. Sept. 21, 2016) (quotations and citations omitted); *see also Grede v. FCStone, LLC*, 746 F.3d 244, 259 (7th Cir. 2014) (finding that bankruptcy laws preempted an unjust enrichment claim because "[t]o allow an unjust enrichment claim in this context would allow the trustee or a creditor to make an end run around the bankruptcy code's allocation of assets and losses, frustrating the administration of the bankruptcy estate under federal bankruptcy law").

The IDCSA claim is based on the following alleged conduct:

[C]ollecting or seeking to collect improper and inflated fees and charges, capitalizing fees and charges [Defendants] knew to be improper via loan modifications, placing loans in manufactured states of delinquency or default, reporting inaccurate credit information, failing to perform escrow analysis and calculate proper escrow payments, mismanaging escrow funds, failing to send interest rate and payment change notices, and failing to notify Plaintiffs[ ] of alleged escrow shortages and deficiencies.

[Filing No. 19 at 81.]  At least some of this alleged conduct – including attempting to collect debts that were "improper" – appears to be based on Defendants' alleged violation of the bankruptcy discharge injunction.  The Court finds that to the extent the IDCSA claim is based on conduct that violated the Bankruptcy Code, it is preempted.  *Grede*, 746 F.3d at 259.  The Court **SUSTAINS** Ocwen's Objection on that issue and **REJECTS** the Bankruptcy Court's Report and Recommendation to the extent that it recommends denying Ocwen's Motion to Dismiss the portion of the IDCSA claim based on that conduct.

As for the portion of the IDCSA claim based on inaccurate credit reporting – including allegations that Defendants "report[ed] inaccurate credit information," [Filing No. 19 at 81] – the FCRA provides that "[n]o requirement or prohibition may be imposed under the laws of any State…with respect to any subject matter regulated under…section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."  15

U.S.C. § 1681t(b)(1)(F).  The Court finds that the FCRA preempts any IDCSA claim based on Defendants' inaccurate reporting of Plaintiffs' mortgages, **SUSTAINS** Ocwen's Objection based on that issue, and **REJECTS** the Bankruptcy Court's Report and Recommendation to the extent it recommends allowing that portion of the IDCSA claim to proceed.  *See Prosser v. Capital One Bank (USA), N.A.*, 2021 WL 6050015, at \*9-12 (S.D. Ind. Dec. 21, 2021) (finding that FCRA preempted IDCSA claim based on defendant's alleged "reporting highly inaccurate information to the general public in the credit reports").[7]

In sum, the Court **SUSTAINS** Ocwen's Objection and **REJECTS** the Bankruptcy Court's Report and Recommendation to the extent it recommends allowing the following claims to proceed: (1) Mr. O'Flynn's, Mr. Novak's, and Mr. Addison's IHLPA claims; (2) Mr. O'Flynn's and Mr. Addison's IDCSA claims to the extent that they are based on conduct that violated the Bankruptcy Code; and (3) Mr. O'Flynn's, Mr. Novak's, and Mr. Addison's IDCSA claims to the extent that they are based on conduct that violated the FCRA.  The Court **GRANTS** Ocwen's Motion to Dismiss those claims, **DISMISSES** them **WITH PREJUDICE**, and **ADOPTS** the Bankruptcy Court's Report and Recommendation as to the IDCSA claim in all other respects.

## B.    Count IV (RESPA) Against Ocwen

### 1.    *Amended Complaint Allegations*

Plaintiffs allege in the Amended Complaint that Ocwen has failed to make timely payments from escrow "on behalf of Novak and members of the Chapter 13 Class" and that "Ocwen's

---

[7] The Court acknowledges that Ocwen did not raise FCRA preemption in its Motion to Dismiss, but that was because it did not view Plaintiffs' IDCSA claims as based on inaccurate credit reporting.  When the Bankruptcy Court characterized Plaintiffs' IDCSA claims as based in part on "the servicing of accounts, including the accuracy of information of borrowers' accounts and application of payments," [Filing No. 15 at 29], Ocwen raised the issue of FCRA preemption in its Objection.  Because the Bankruptcy Court characterized Plaintiffs' IDCSA claims in that way, the Court finds it appropriate to consider Ocwen's Objection as it relates to FCRA preemption.

violation of RESPA has deprived Plaintiff's (sic) of the benefit of timely tax deductions associated with the payment of property taxes and/or caused them to file inaccurate tax returns that will need to be amended."  [Filing No. 19 at 80.]  They rely upon 12 U.S.C. § 2605 and Regulation X, 12 C.F.R. § 1024, *et seq*.  [Filing No. 19 at 80.]

### 2.      *Ocwen's Motion to Dismiss*

Ocwen argued in support of its Motion to Dismiss that Mr. Novak is the only plaintiff that alleges that Ocwen made untimely tax payments, and that he fails to allege which payments Ocwen was obligated and failed to make, when those payments were due, or any other facts to support their claims.  [Filing No. 19-2 at 65-66.]  Ocwen noted that Plaintiffs allege in the Amended Complaint that either Ocwen's "failure to perform adequate escrow analysis, or timely pay property taxes from escrow" resulted in an escrow deficiency.  [Filing No. 19-2 at 66 (emphasis and quotation omitted).]  Ocwen argued further that, while RESPA provided a private right of action for certain RESPA violations, that action must be brought in the district in which the plaintiff's property is located.  [Filing No. 19-2 at 67.]  It asserted that Mr. Novak's property is located in the Northern District of Indiana and Mr. Wilhold's property is located in the Southern District of Illinois, so their RESPA claims should be dismissed for this additional reason.  [Filing No. 19-2 at 67.]

In their response to Ocwen's Motion to Dismiss, Plaintiffs argued that Mr. Novak has sufficiently alleged a RESPA claim because he alleges that Ocwen failed to make a property tax payment in a timely manner.  [Filing No. 19-3 at 30.]  They argued further that RESPA allows a claim to be brought in the district where the property is located "or in any other court of competent jurisdiction," and that Ocwen does not argue that venue in this Court is improper.  [Filing No. 19-3 at 31.]

In its reply, Ocwen argued that Plaintiffs did not address its argument that only Mr. Novak alleges RESPA violations, and that Mr. Novak does not identify the allegedly missed payment upon which his RESPA claim is based. [Filing No. 19-3 at 65.] Ocwen reiterated its argument that Mr. Novak can only bring a RESPA claim in the district in which his property is located. [Filing No. 19-3 at 65-66.]

### 3.    *The Report and Recommendation*

In the Report and Recommendation, the Bankruptcy Court found that Mr. O'Flynn had not alleged a violation of RESPA, but that Mr. Novak "alleges Ocwen mailed [him] an escrow statement misrepresenting [his] escrow account deficiency, ceased paying property taxes from escrow, and failed to perform adequate escrow analysis"; that Mr. Wilhold "alleges a misrepresentation in the off-schedule escrow statement"; and that Mr. Addison "also alleges a misrepresentation in the off-schedule statement." [Filing No. 15 at 27.] It concluded that, therefore, Mr. Novak, Mr. Wilhold, and Mr. Addison had all adequately pled RESPA claims and recommended that Ocwen's Motion to Dismiss the RESPA claims as to those Plaintiffs be denied. [Filing No. 15 at 27.]

### 4.    *The Objection*

Ocwen argues in its Objection that the Bankruptcy Court did not address the argument that RESPA claims must be brought in the district in which the property is located and that allowing Mr. Novak and Mr. Wilhold to maintain their RESPA claims in this district "is contrary to the plain language of RESPA." [Filing No. 16 at 6.] It asserts further that the Bankruptcy Court found that the notice-and-cure provisions in Mr. Novak's and Mr. Wilhold's mortgages apply to all claims "other than those with respect to inaccurate reporting to credit reporting agencies" and that the handling of escrow funds is governed by the mortgages and subject to the notice-and-cure

provisions, so the RESPA claims are also barred because Mr. Novak and Mr. Wilhold failed to comply with those provisions.  [Filing No. 16 at 7 (quotation and citation omitted).]  Finally, Ocwen argues that the Bankruptcy Court recommended that Ocwen's Motion to Dismiss as to Mr. Addison's RESPA claim be denied because he sufficiently alleged a violation of 12 C.F.R. § 1024.17(c)(3), but that there is no private cause of action for a violation of that provision.  [Filing No. 16 at 8.]  Ocwen notes that "[t]he parties did not brief this issue on Ocwen's motion to dismiss because Plaintiffs did not plead 12 C.F.R. § 1024.17(c) as a basis for their RESPA claims."  [Filing No. 16 at 8.]

In their response, Plaintiffs argue that RESPA allows a claim to be brought in any court of competent jurisdiction and that Ocwen relies only on cases relating to improper venue rather than jurisdiction.  [Filing No. 17 at 2.]  Plaintiffs contend that Ocwen did not argue in its Motion to Dismiss that a failure to comply with the notice-and-cure provisions in Mr. Novak's and Mr. Wilhold's mortgages bar them from suing under RESPA and that, even if they did, "the Court should not permit Ocwen (who is not even the mortgagee) to invoke the inapplicable notice-and-cure language so as to displace or contravene the policy and purpose behind…RESPA."  [Filing No. 17 at 2-3.]  Plaintiffs also argue that as to Mr. Addison's RESPA claim, Ocwen did not argue in its Motion to Dismiss that there is no private right of action for violation of 12 C.F.R. § 1024.17(c).  [Filing No. 17 at 3-4.]

In its reply, Ocwen reiterates its argument that Mr. Novak and Mr. Wilhold may not bring their RESPA claims in this district.  [Filing No. 18 at 4-5.]  It argues further that the notice-and-cure provisions in Mr. Novak's and Mr. Wilhold's mortgages bar their RESPA claims and that the Bankruptcy Court found that they were required to comply with those provisions before asserting claims related to the handling of their escrow funds.  [Filing No. 18 at 5.]  Finally, Ocwen asserts

that it did not argue in connection with its Motion to Dismiss that there is no private right of action under 12 C.F.R. § 1024.17(c)(3) because Plaintiffs did not bring a claim under that provision. [Filing No. 18 at 7.]

### 5.   *Discussion*

The Court **ADOPTS** the Report and Recommendation to the extent it recommends that Ocwen's Motion to Dismiss should be granted as to Mr. O'Flynn's RESPA claim because he does not allege a violation of RESPA, **GRANTS** Ocwen's Motion to Dismiss Mr. O'Flynn's RESPA claim, and **DISMISSES** that claim **WITH PREJUDICE**.  It goes on to consider the RESPA claims set forth by Mr. Novak, Mr. Wilhold, and Mr. Addison.

### a.   Mr. Novak and Mr. Wilhold

12 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred….

Plaintiffs focus only on the phrase "or in any other court of competent jurisdiction" to argue that even though Mr. Novak's and Mr. Wilhold's properties are not located in this district, it does not matter because they may assert their RESPA claims in any court that has jurisdiction.  But this reading ignores the phrase "in which the property involved is located," which is separated from the provision by commas and which the Court reads to modify the phrase "in the United States district court or in any other court of competent jurisdiction."  Another "court of competent jurisdiction" could include a state court.  *See Felgenhauer v. Nationstar Mortg. LLC*, 2022 WL 2703967, at *3 n.4 (N.D. Ill. July 12, 2022) ("RESPA claims that are inextricably intertwined with state court judgments may still be raised in state court proceedings.").

Plaintiffs' reading of § 2614 would be correct if it provided that RESPA claims could be brought "in the United States district court for the district in which the property involved is located, or in any other court of competent jurisdiction" – but it does not.  Here, Mr. Novak's property is located in the Northern District of Indiana and Mr. Wilhold's property is located in the Southern District of Illinois.  Under § 2614, they had to bring their RESPA claims in those districts, whether it be in federal or state court.  The Bankruptcy Court did not address Ocwen's argument regarding the proper venue for Mr. Novak's and Mr. Wilhold's RESPA claims.  The Court finds that Ocwen's argument is dispositive, **SUSTAINS** Ocwen's Objection as to that issue, **REJECTS** the Report and Recommendation to the extent that it recommends denying Ocwen's Motion to Dismiss as to Mr. Novak's and Mr. Wilhold's RESPA claims, **GRANTS** Ocwen's Motion to Dismiss those claims and **DISMISSES** Mr. Novak's and Mr. Wilhold's RESPA claims **WITHOUT PREJUDICE** for improper venue.[8]

### b.   Mr. Addison

As to Mr. Addison, it is significant that Ocwen argued in its Motion to Dismiss that the RESPA claim is based on Ocwen's alleged failure to make timely payments from escrow but Mr. Novak is the only Plaintiff that alleges that Ocwen made untimely payments, [Filing No. 19-2 at 65-66], and that Plaintiffs did not respond to that argument, [*see* Filing No. 19-3 at 29-31 (only addressing Mr. Novak's RESPA claim in response brief).][9]   Again, Plaintiffs waived any opposition to Ocwen's argument by failing to address it, *Bonte*, 624 F.3d at 466, and that alone

---

[8] "[A] dismissal for improper venue is without prejudice because it is not an adjudication on the merits." *Johnson v. W. & S. Life Ins. Co.*, 598 F. App'x 454, 456 (7th Cir. 2015) (citing Fed. R. Civ. Pro. 41(b)).

[9] The Bankruptcy Court did not address Ocwen's argument that only Mr. Novak asserts a RESPA claim in the Amended Complaint, or Plaintiffs' failure to address that argument.  [*See* Filing No. 15 at 26-27.]

warrants dismissal of RESPA claims brought by anyone other than Mr. Novak, including Mr. Addison.   Additionally, the Court agrees that Mr. Novak is the only Plaintiff that specifically asserted a RESPA claim in the Amended Complaint.   [*See* Filing No. 19 at 79-80 (alleging that "Ocwen has failed to make timely payments from escrow on behalf of Novak and members of the Chapter 13 Class").]

Further, the Bankruptcy Court found that Mr. Addison "alleges a misrepresentation in the off-schedule escrow statement," [Filing No. 15 at 27], which is a violation of RESPA addressed in 12 C.R.F. § 1024.17(c)(3).   That provision requires the loan servicer to conduct an analysis of the escrow account and "prepare and submit an annual escrow account statement to the borrower." *Id.* It is a violation of RESPA that is separate and apart from the failure to make timely payments, which is addressed in 12 C.F.R. §§ 1024.17(k) and 1024.34(a) – the sections of RESPA upon which Plaintiffs rely in the Amended Complaint.   [*See* Filing No. 19 at 79-80.]   It is also a violation of RESPA for which there is no private right of action.   *See, e.g., Dahar v. Pennymac Loan Servs., LLC*, 2024 WL 402732, at *3 (D. Nev. Feb. 1, 2024) ("There is no private right of action for 12 C.F.R. § 1024.17."); *Ghattas v. Caliber Home Loans, Inc.*, 2021 WL 536462, at *4 (S.D. Tex. Jan. 25, 2021) ("[N]o private right of action exists for violations of the regulations set forth in 12 C.R.F. § 1024.17."); *Zinetti v. Deutsche Bank Nat'l Tr. Co.*, 2020 WL 409725, at *4 (D. Del. Jan. 24, 2020) ("Section 2609 is implemented by 12 C.F.R. § 1024.17, which courts have likewise concluded does not authorize a private right of action.").

The Court **SUSTAINS** Ocwen's Objection as to Mr. Addison's RESPA claim, **REJECTS** the Report and Recommendation to the extent that it recommends denying Ocwen's Motion to Dismiss as to Mr. Addison's RESPA claim, **GRANTS** Ocwen's Motion to Dismiss Mr. Addison's RESPA claim, and **DISMISSES** that claim **WITH PREJUDICE**.

### C.      Counts I, II, and VIII Against Altisource[10]

At the outset, the Court acknowledges that the Report and Recommendation recommends

granting Altisource's Motion to Dismiss all of Plaintiffs' claims against it, and that Altisource has

not filed an Objection to the Report and Recommendation.  Nevertheless, the Court is permitted

to – and, under the circumstances, required to – address an argument Altisource made in its Motion

to Dismiss and which the Bankruptcy Court did not address.  *See Schur v. L.A. Weight Loss*

*Centers, Inc.*, 577 F.3d 752, 761 (7th Cir. 2009) ("[A]lthough the district just must make an

independent determination of a magistrate judge's order upon objection, [she] is not precluded

from reviewing a [portion of a] magistrate judge's order to which a party did not object.")

(emphasis omitted).

Specifically, Altisource argued in its Motion to Dismiss that Plaintiffs did not have

standing to assert any claims against it because they did not allege "a direct causal relationship

between [their] alleged injuries and Altisource."  [Filing No. 97-1 in the Adversary Proceeding at

17.]  Altisource asserted that it is a third-party vendor hired by Ocwen to provide services to

Ocwen; that "[a]t most, Plaintiffs have alleged that Ocwen obtained ancillary services through

Antisource and that Altisource 'marked up' third-party vendors' charges for services, passing the

charges along to Ocwen"; that their allegations link Altisource to Ocwen and not to Plaintiffs; and

that Plaintiffs have not established injury-in-fact due to any of Altisource's actions because they

"have failed to allege that they took any detrimental steps based on Altisource's actions" and do

not allege "any contracts, transactions, communications, or interactions between Plaintiffs and

---

[10] Although not clear from their Amended Complaint, Plaintiffs state in their response to
Altisource's Motion to Dismiss that their claims against Altisource are limited to Counts I and II
(RICO violations) and Count VIII (unjust enrichment).  [Filing No. 176 in the Adversary
Proceeding at 14-15.]

Altisource that gave rise to any of Plaintiffs' alleged injuries." [Filing No. 97-1 in the Adversary Proceeding at 17-19.]

Plaintiffs argued in response that "the harm [they] allege[ ]…stems from the RICO enterprise relationship between Ocwen and Altisource, not merely from their independent acts in furtherance of such enterprise." [Filing No. 176 in the Adversary Proceeding at 3.] They relied on their allegations that "Altisource provided ancillary services to Plaintiffs in relation to their respective loans, such as property inspection and preservation services, which were ultimately billed to and paid for by Plaintiffs," and that "Altisource maintained and provided the REALServicing platform to Ocwen, which platform directly caused much of the harm alleged by Plaintiffs." [Filing No. 176 in the Adversary Proceeding at 4.]

Altisource argued in its reply that "mere allegations that a defendant had a business relationship with the alleged RICO enterprise or that a defendant performed services for that enterprise are insufficient to establish standing," and that "Plaintiffs merely allege a business relationship between the various defendants and fail to assert that Altisource managed or exerted any control over the enterprise." [Filing No. 198 in the Adversary Proceeding at 6.] It contended that "Plaintiffs' alleged injuries are not fairly traceable to Altisource's actions," and that "[s]imilar to how an auto manufacturer should not be liable to a pedestrian who is…injured when a driver accidentally runs a stop sign, neither should Altisource be liable for the manner in which REALServicing was allegedly used by another party." [Filing No. 198 in the Adversary Proceeding at 7.] Finally, it argued that Plaintiffs waived their arguments in opposition to Altisource's arguments that Altisource had no direct relationship or interaction with them, that they lack standing to sue third parties who did not provide them with services or products, and that they

fail to show that they took detrimental steps because of Altisource's actions. [Filing No. 198 in the Adversary Proceeding at 7.]

The Bankruptcy Court did not address Altisource's standing arguments in its Report and Recommendation. [*See* Filing No. 15.] But this Court must, because it has an obligation to determine whether a party has standing to sue under Article III of the United States Constitution. Indeed, standing is a threshold issue, and the Court must discuss it at the outset. *Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). "Because standing is an essential ingredient of subject-matter jurisdiction, it must be secured at each stage of the litigation." *Id.* Although at the pleading stage "general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), "[o]nce the allegations supporting standing are questioned as a factual matter – either by a party or by the court – the plaintiff must support each controverted element of standing with 'competent proof,'" *Bazile*, 983 F.3d at 278 (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). "Competent proof" means "a showing by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996).

To have standing to sue in federal court under Article III, a plaintiff must establish that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). Injury in fact is "the '[f]irst and foremost' of standing's three elements," and the plaintiff must show that he or she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 338-39 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103

23

(1998); *Lujan*, 504 U.S. at 560 (internal quotations omitted)).   "Without an injury that the defendant caused and the court can remedy, there is no case or controversy under Article III." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 734 (7th Cir. 2023).

Here, Plaintiffs rely on their RICO allegations to support a finding of standing.[11]   In connection with their RICO claims, Plaintiffs' allegations focus on Ocwen's use of "ancillary services" provided by Altisource that Ocwen then used to "mark up" fees on Plaintiffs' loans.  [*See, e.g.*, Filing No. 19 at 70-71.]  The Court agrees with the Bankrupcty Court's finding in the Report and Recommendation that Plaintiffs' RICO allegations "amount to a typical run of the mill commercial relationship that runs off the rails in the case of some loans in bankruptcy, due to the failure of only one party to abide by the rules of the bankruptcy system."  [Filing No. 15 at 20.]  Plaintiffs' allegations do not support a finding that they suffered an injury-in-fact that is fairly traceable to Altisource's actions.  *See Spokeo, Inc.*, 578 U.S. at 337.[12]   Further, Plaintiffs did not argue in their response to Altisource's Motion to Dismiss that their unjust enrichment claim provides a basis for standing, so have waived any argument to that effect.  *Bonte*, 624 F.3d at 466.

The Court finds that Plaintiffs do not have standing to assert their claims against Altisource.  Accordingly, it **REJECTS** the Report and Recommendation to the extent it recommends

---

[11] Plaintiffs reference their FDCPA claims in their response brief, arguing that "[t]his same logic defeats Altisource's argument that Plaintiffs cannot establish an injury-in-fact under the FDCPA." [Filing No. 176 in the Adversary Proceeding at 4.]  But later in their response brief, Plaintiffs state that they are not asserting an FDCPA claim against Altisource.  [Filing No. 176 in the Adversary Proceeding at 14.]

[12] Additionally, although Altisource did not make this argument, standing under RICO is narrower than Article III standing and pecuniary loss as a result of personal injuries is not sufficient to confer standing under RICO.  *See Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 590 (7th Cir. 2017).  Rather, a plaintiff must allege injury to his or her "business or property by reason of" the RICO violation.  18 U.S.C. § 1964(c).  Plaintiffs have not done so here.

dismissing Plaintiffs' claims against Altisource on other grounds and, instead, **DISMISSES**

Plaintiffs' claims against Altisource **WITHOUT PREJUDICE** for lack of jurisdiction.[13]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Ocwen's Objection, [16], and:

- **REJECTS** the Report and Recommendation to the extent that it recommends allowing the following claims to proceed:(1) Mr. O'Flynn's, Mr. Novak's, and Mr. Addison's IHLPA claims; (2) Mr. O'Flynn's and Mr. Addison's IDCSA claims to the extent that they are based on conduct that violated the Bankruptcy Code; and (3) Mr. O'Flynn's, Mr. Novak's, and Mr. Addison's IDCSA claims to the extent that they are based on conduct that violated the FCRA.  Instead, the Court **GRANTS** Ocwen's Motion to Dismiss those claims and **DISMISSES** those claims **WITH PREJUDICE**;

- **REJECTS** the Report and Recommendation to the extent that it recommends denying Ocwen's Motion to Dismiss as to Mr. Novak's and Mr. Wilhold's RESPA claims, **GRANTS** Ocwen's Motion to Dismiss those claims, and **DISMISSES** Mr. Novak's and Mr. Wilhold's RESPA claims **WITHOUT PREJUDICE** for improper venue; and

- **REJECTS** the Report and Recommendation to the extent that it recommends denying Ocwen's Motion to Dismiss as to Mr. Addison's RESPA claim, **GRANTS** Ocwen's Motion to Dismiss that claim, and **DISMISSES** that claim **WITH PREJUDICE**.

Additionally, the Court **REJECTS** the Report and Recommendation to the extent it recommends

dismissing Plaintiffs' claims against Altisource on grounds other than a lack of standing and,

instead, **GRANTS** Altisource's Motion to Dismiss and **DISMISSES** Plaintiffs' claims against

Altisource **WITHOUT PREJUDICE** for lack of jurisdiction

---

[13] A dismissal for lack of jurisdiction is without prejudice. *See Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 661 (7th Cir. 2011).

The Court **ADOPTS** the Report and Recommendation in all other respects, and **GRANTS**

Ocwen's Motion to Dismiss on all other claims except for the following claims, for which the Court

**DENIES** Ocwen's Motion to Dismiss and which will proceed:

- Mr. O'Flynn's and Mr. Addison's claim for violation of the discharge injunction, Fed. R. Bankr. P. 3002.1, and 11 U.S.C. § 362(a) (Count VII), which will proceed in the Bankruptcy Court;

- FDCPA claim (Count III) on behalf of Mr. O'Flynn, Mr. Wilhold, and Mr. Addison against Ocwen, which will proceed in this Court; and

- IDCSA claim (Count V) on behalf of Mr. O'Flynn and Mr. Addison to the extent that it is not based on conduct that violated the Bankruptcy Code or the FCRA, which will proceed in this Court.

The Court requests that the Magistrate Judge confer with the parties to develop a case management

plan and to discuss possible resolution of the claims that remain in this Court as soon as practicable.

Date: 5/31/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**