UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DAVID ROBERT O'FLYNN, DONALD L. WILHOLD,     )
and JAMES ADDISON,                            )
                                              )
                                              )
                            *Plaintiffs*,     )
                                              )
                    v.                        )         1:22-cv-00335-JMS-MG
                                              )
                                              )
PHH MORTGAGE CORPORATION and OCWEN            )
FINANCIAL CORPORATION,                        )
                                              )
                            *Defendants*.     )

**ORDER**

Plaintiffs David O'Flynn and James Addison filed for Chapter 13 bankruptcy in the United

States Bankruptcy Court for the Southern District of Indiana (the "Bankruptcy Court"), and

Plaintiff Donald Wilhold filed for Chapter 13 bankruptcy in the United States Bankruptcy Court

for the Southern District of Illinois. Subsequently, together they filed an Adversary Proceeding in

the Bankruptcy Court against Defendants PHH Mortgage Corporation ("PHH") and Ocwen

Financial Corporation ("Ocwen")[1]. [*O'Flynn v. PHH Mortgage Corp., et al.*, Adversary No. 21-

50079 (S.D. Ind. Bk. Ct.) (the "Adversary Proceeding").][2] In their Amended Complaint in the

Adversary Proceeding, Plaintiffs alleged that Defendants engaged in fraudulent practices in

---

[1] Defendants refer to Ocwen as "Onity Group Inc., formerly known as Ocwen Financial Corp." in recent filings. [*See, e.g.*, Filing No. 35 at 1.] Ocwen is the entity named as a Defendant in this case, so the Court will continue to refer to it as "Ocwen." To the extent Ocwen believes it is improperly named, it is **ORDERED** to confer with Plaintiffs regarding that issue and to file the appropriate motion to correct the discrepancy, if necessary. The Court will not change Ocwen's name absent such a motion.

[2] Plaintiffs also asserted claims against AltiSource Solutions, Inc. ("AltiSource"), but the Court dismissed all claims against that entity in a May 31, 2024 Order. [Filing No. 24.]

connection with the servicing of home mortgage loans owed by individuals in Chapter 13 bankruptcy proceedings, and asserted various claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Indiana Deceptive Consumer Sales Act, Ind. Code § 14-5-0.5, *et seq.* ("IDCSA"), and the Indiana Home Loan Practices Act, Ind. Code § 24-9-1, *et seq.* ("IHLPA"); and claims that Defendants violated a discharge injunction and automatic stay imposed by the Bankruptcy Court.  [Filing No. 19 at 69-87.]  On May 31, 2024, the Court issued an Order sustaining Ocwen's Objections to Proposed Findings of Fact and Conclusions of Law that the Bankruptcy Court had issued on Motions to Dismiss filed by Defendants, and ultimately rejected the Report and Recommendation in part and adopted it in part.  [Filing No. 24.]

After the Court issued its May 31, 2024 decision – which significantly reduced the claims that were to proceed in this Court – Plaintiffs, at the Magistrate Judge's direction, filed a Class Action Complaint and Demand for Jury Trial (the "Second Amended Complaint").  [Filing No. 33.]  Defendants have now filed a Motion to Strike Certain Allegations from the Complaint, [Filing No. 35], and a Motion to Strike Class Allegations, [Filing No. 36], both of which are ripe for the Court's decision.

## I.
### MOTION TO STRIKE CERTAIN ALLEGATIONS

#### A.  Background

In its May 31, 2024 Order, the Court dismissed all claims asserted by Kenneth Novak, a former Plaintiff in this case; found that Mr. O'Flynn's and Mr. Addison's claims for violation of the discharge injunction, Fed. R. Bankr. P. 3002.1, and 11 U.S.C. § 362(a) (Count VII) would proceed in the Bankruptcy Court; dismissed many of the remaining Plaintiffs' other claims; and set forth the two claims that would proceed in this Court as follows:

- Mr. O'Flynn's, Mr. Wilhold's, and Mr. Addison's FDCPA claim against Ocwen (Count III); and

- Mr. O'Flynn's and Mr. Addison's IDCSA claim (Count V) to the extent that it is not based on conduct that violated the Bankruptcy Code or the Fair Credit Reporting Act ("FCRA").

[Filing No. 24 at 26.]  The Court requested that the Magistrate Judge "confer with the parties to develop a case management plan and to discuss possible resolution of the claims that remain in this Court as soon as practicable."  [Filing No. 24 at 26.]

Subsequently, the Magistrate Judge held a status conference and on July 3, 2024, he issued an Order noting that the Amended Complaint contained over 300 allegations, that "[s]ome of these allegations are relevant to the Bankruptcy Count, and some are relevant to the District Court Counts," and that "[t]o properly divide and streamline these separate proceedings, the Court orders Plaintiffs [to] file two complaints, a Count VII complaint in the Bankruptcy proceeding, and a Counts III and  IV complaint in the District Court proceeding."  [Filing No. 29 at 1.]  Implied in this Order was the directive that the new Complaint only contain allegations relevant to Counts III and IV.

Plaintiffs filed the Second Amended Complaint on July 19, 2024.  [Filing No. 33.]  While it only contains the FDCPA and IDCSA claims (re-numbered as Counts I and II, respectively), it contains 267 paragraphs of allegations plus 31 paragraphs specific to the FDCPA and IDCSA claims – even more than the First Amended Complaint, which contained 246 paragraphs of allegations plus 26 paragraphs specific to those counts.  [See Filing No. 19 at 26-68; Filing No. 19 at 77-79; Filing No. 19 at 80-82; Filing No. 33.]

**B.  Standard of Review**

Federal Rule of Civil Procedure 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

Civ. P. 12(f).  In the Seventh Circuit, motions to strike are generally disfavored, but such a motion "may serve to expedite, not delay, when it seeks to strike portions of a pleading to remove unnecessary clutter from the case." *Schmitz v. Four D Trucking, Inc.*, 2014 WL 309190, at *2 (N.D. Ind. Jan. 28, 2014) (quotations and citations omitted).  The Court "has considerable discretion" in evaluating and granting a motion to strike redundant material. *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (citation omitted).

### C. Discussion

In their Motion to Strike, Defendants request that the Court strike allegations falling into five categories: (1) those that relate to Mr. Novak, whose claims the Court has dismissed; (2) those that relate to a "curable deceptive act" under the IDCSA because Plaintiffs have withdrawn that claim; (3) those that relate to the IDCSA claims being based on violations of the Bankruptcy Code and/or the FCRA because the Court dismissed those claims; (4) those regarding the relationship between AltiSource and Ocwen because they relate to the RICO claims, which have been dismissed; and (5) Plaintiffs' request for punitive damages, because none of the remaining claims authorize that relief.  [Filing No. 35 at 4-6.]  Defendants attach a chart setting forth which paragraphs in the Second Amended Complaint fall within which category of allegations that they seek to strike.  [Filing No. 35-1 at 2.]  The Court addresses each category of allegations in turn. At the outset, however, the Court addresses Plaintiffs'[3] argument in their response brief that the Motion to Strike is untimely.

---

[3] The response was filed on behalf of Mr. O'Flynn, Mr. Novak, and Mr. Wilhold – but not Mr. Addison.  As noted, Mr. Novak no longer has viable claims in this case.  [*See* Filing No. 24.]  Mr. Addison does have viable claims, but the response was not filed on his behalf, [*see* Filing No. 48 at 1 (specifying that the response is filed on behalf of Mr. O'Flynn, Mr. Novak, and Mr. Wilhold)], and he has not otherwise responded.  For simplicity, the Court refers to Mr. O'Flynn and Mr. Wilhold as "Plaintiffs," but notes that this does not include Mr. Addison since the response was not filed on his behalf.

        *1. Timeliness of Motion to Strike*

In its response to Defendants' Motion to Strike, Plaintiffs assert that a Rule 12(f) motion must be filed either before responding to the pleading or within 21 days after being served with the pleading. [Filing No. 48 at 2.] They argue that "despite having been served with the 'same' pleading more than a year ago, and having already responded to the 'same' pleading by way of its Motion to Dismiss, [Defendants] seek[ ] to parlay the Court's acquiescence in Ocwen's request that Plaintiffs' (sic) file a revised complaint under this cause number so to 'properly divide and streamline these separate proceedings' into an otherwise improper third crack at whittling down [the] operative Complaint." [Filing No. 48 at 2, n.1.]

Defendants argue in their reply that the 21-day deadline in Rule 12(f) only applies if a response to the pleading is not permitted, but a response to the Second Amended Complaint is allowed here. [Filing No. 54 at 2.] They contend that they filed their Motion to Strike before their response to the Second Amended Complaint was due, in compliance with Rule 12(f). [Filing No. 54 at 2.] Defendants note that Plaintiffs admit that they filed essentially the same complaint when they were "directed by this Court to file something different," and that they "continue to brazenly ignore" the Court's orders. [Filing No. 54 at 2.]

Rule 12(f)(2) provides that a motion to strike may be filed "before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Plaintiffs' reliance on the 21-day deadline is misplaced because Defendants are entitled to file a response to the Second Amended Complaint. Accordingly, the 21-day deadline does not apply. Instead, Defendants were required to file the Motion to Strike before responding to the Second Amended Complaint, which they have done. Their Motion to Strike is timely under Rule 12(f)(2).

Further, any suggestion that the Motion to Strike constitutes an "improper third crack at whittling down [the] operative Complaint," [Filing No. 48 at 2, n.1], is incorrect and disingenuous. The Magistrate Judge specifically ordered Plaintiffs to file an amended complaint to "streamline" the litigation in light of the Court's dismissal of Mr. Novak's claims and of many of the remaining Plaintiffs' claims. Instead, Plaintiffs ignored that Order, filed essentially the same complaint, and now accuse Defendants of wrongdoing. Defendants' Motion to Strike was timely filed and appropriate under the circumstances, as discussed more fully below.

2. *Allegations Related to Mr. Novak*

In support of their Motion to Strike, Defendants argue that Plaintiffs "include five pages of allegations that are specific to [Mr.] Novak…, plus others throughout the [Second Amended] Complaint, and include him as a party to both [remaining] counts." [Filing No. 35 at 4.] Defendants assert that "[t]here are no surviving claims with respect to which Novak-specific allegations would be material or pertinent," so the Court should strike those allegations. [Filing No. 35 at 4.]

Plaintiffs do not address Defendants' Novak-specific arguments in their response brief. [Filing No. 48.] Instead, they set forth the following general arguments without any effort to tie them to the specific allegations that Defendants seek to strike:

- "Mere redundancy or immateriality of allegations is not enough to trigger the drastic measure of striking the pleading or parts thereof; the pleading must be prejudicial to the defendant."

- "Here, [Defendants] only argue[ ] the allegations are irrelevant, [they] do not make any requisite showing they have no possible relation to the controversy at hand."

- "[E]ach factual allegation does bear such a tangential relationship even though they may be presently tied to a now dismissed claimant or cause of action."

- "Plaintiffs' (sic) were not required to exhaustively plead all facts and conduct in support of their claims."

- "Similarly, discovery may result in Plaintiffs' (sic) seeking to raise additional causes of action stemming from variations of conduct already alleged."

- "[Defendants have] failed to demonstrate any of the allegations would result in undue prejudice and [do] not otherwise argue they are scandalous."

- "To be sure, the challenged allegations do not 'confuse[ ] the issues' and are neither sufficiently complex nor so numerous as to place any meaningful burden on [Defendants]."

[Filing No. 48 at 3-4.]

Defendants point out in their reply that Plaintiffs did not address the Novak-specific allegations.  [Filing No. 54 at 3.]

Because Plaintiffs did not address Defendants' argument that the Court should strike any allegations related to Mr. Novak since all of his claims have been dismissed, they have waived any opposition to it.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument…results in waiver.").  In any event, Defendants are correct.  The Court dismissed all of Mr. Novak's claims in its May 31, 2024 Order, [*see* Filing No. 24], and Plaintiffs do not even attempt to explain how any allegations related to him could be relevant to the remaining claims in this case.

Rather, Plaintiffs argue that Defendants have not shown that any superfluous allegations are prejudicial.  But the case upon which Plaintiffs rely in arguing that Defendants must show prejudice also instructs that allegations may be stricken if they "bear[ ] no possible relation to the controversy."  *Talbot v. Robert Matthews Dist. Co.*, 961 F.2d 654, 664 (7th Cir. 1992).  That is certainly the case here.  The Second Amended Complaint is in direct contravention of the Magistrate Judge's July 3, 2024 Order, which directed Plaintiffs to file a new Complaint in order to "streamline" the litigation going forward.  This "streamlining" was necessary because the Court

had dismissed many of the claims, including all of Mr. Novak's claims.  Instead, Plaintiffs included over 40 paragraphs of allegations specific to a Plaintiff whose claims have been dismissed from this litigation, and held steadfast in the inclusion of those allegations by not conceding in their response brief that those allegations should not have been included.  This has resulted in a waste of time for Defendants' counsel and a waste of judicial resources for the Court.

Accordingly, the Court **GRANTS** Defendants' Motion to Strike as to all allegations related to Mr. Novak, and **STRIKES** paragraphs 147-185, 252, 261, 269 (reference to Mr. Novak only), and 282 of the Second Amended Complaint.

### 3.  *"Curable Deceptive Act" Allegations Under the IDCSA*

In support of their Motion to Strike, Defendants argue that Plaintiffs withdrew their IDCSA claim based on a "curable deceptive act" in their response to Defendants' Motion to Dismiss, but still allege that Defendants committed curable deceptive acts in their Second Amended Complaint. [Filing No. 35 at 4.]  They request that the Court strike those allegations.  [Filing No. 35 at 4-5.]

Again, Plaintiffs do not specifically address Defendants' arguments, [*see* Filing No. 48], and Defendants point out that shortcoming in their reply, [*see* Filing No. 54].

Plaintiffs have waived any opposition to Defendants' argument, *Bonte,* 624 F.3d at 466, and Defendants' argument is well-taken in any event.  There is no dispute that Plaintiffs abandoned their IDCSA claim based on a "curable deceptive act." [*See* Filing No. 19-3 at 32.]  They have not set forth any reason why allegations related to curable deceptive acts should remain in the Second Amended Complaint, and the Court **GRANTS** Defendants' Motion to Strike those allegations and **STRIKES** paragraphs 290 (reference to "both curable and" only) and 291 of the Second Amended Complaint.

8

4. *Allegations Related to IDCSA Claims Based on Bankruptcy Code or FCRA Violations*

In support of their Motion to Strike, Defendants argue that Plaintiffs' IDCSA claims to the extent they were based on violations of the Bankruptcy Code or the FCRA have been dismissed, and that "extraneous allegations" relating to violating the Bankruptcy Code or the FCRA "confuse[] the issues and make[ ] it less clear to [Defendants] the nature of the claims against [them] and how the alleged bankruptcy and credit reporting violations described in the [Second Amended] Complaint are distinguished from the purported [IDCSA] claims." [Filing No. 35 at 5.]

Plaintiffs did not address this argument in their response, [Filing No. 48], as Defendants point out in their reply, [Filing No. 54].

Again, Plaintiffs have waived any opposition to Defendants' argument. *Bonte*, 624 F.3d at 466. And Defendants are correct – the Court dismissed Mr. O'Flynn's and Mr. Addison's IDCSA claims[4] to the extent they were based on conduct that violated the Bankruptcy Code or the FCRA, [Filing No. 24 at 14], and Plaintiffs have not explained why those allegations are relevant to the remaining claims. The Court **GRANTS** Defendants' Motion to Strike as to allegations related to the IDCSA claims being based on violations of the Bankruptcy Code or the FCRA and **STRIKES** paragraphs 293 (reference to "collecting or seeking to collect improper and inflated fees and charges" and "reporting inaccurate credit information" only) and 297.

---

[4] The Court also dismissed Mr. Wilhold's IDCSA claim no matter its basis, because the real estate for which he held the mortgage relevant to this action is located in Illinois, so the IDCSA did not apply.

## 5.  *Allegations Regarding Relationship Between AltiSource and Ocwen*

Defendants argue in support of their Motion to Strike that AltiSource was a defendant in this case only with respect to Plaintiffs' RICO and unjust enrichment claims, both of which were dismissed.  [Filing No. 35 at 5.]  They note that "Plaintiffs supported their RICO claims in part with extensive allegations regarding the relationship between [Ocwen] and Alti[S]ource," that "[t]he only time Plaintiffs relied on those allegations in the motion to dismiss briefing…was in support of their RICO claims," and that "[n]evertheless, Plaintiffs' [Second Amended] Complaint contains dozens of the same allegations about the relationship between [Ocwen] and Alti[S]ource." [Filing No. 35 at 5-6.]

Plaintiffs do not address this argument in their response brief, [*see* Filing No. 48], as recognized by Defendants in their reply, [Filing No. 55].

Again, Plaintiffs have waived any opposition to Defendants' argument.  *Bonte*, 624 F.3d at 466.  Moreover, the Court finds that allegations regarding Ocwen's relationship with a party that is no longer a defendant, which were made to support claims that are no longer a part of this lawsuit, should be stricken.  Accordingly, it **GRANTS** Defendants' Motion to Strike allegations relating to the relationship between Ocwen and AltiSource and **STRIKES** paragraphs 3 (allegation that "[t]o obtain these services Ocwen historically funneled all of the work through AltiSource who then ordered the services using a network of third-party vendors" only), 5 (reference to "a program maintained and provided by AltiSource" only), 39-74, 80, and 82-86.

## 6.  *Request for Punitive Damages*

Finally, Defendants argue that neither the FDCPA nor the IDCSA authorize an award of punitive damages, so the Court should strike Plaintiffs' request for punitive damages.  [Filing No. 35 at 6.]

In their response, Plaintiffs do not address their request for punitive damages, [Filing No. 48], as Defendants point out in their reply, [Filing No. 54].

Because Plaintiffs do not set forth any argument regarding why their request for punitive damages should not be stricken, they have waived such an argument. *Bonte*, 624 F.3d at 466. In any event, punitive damages are not recoverable under the FDCPA or the IDCSA. *See Saccameno v. U.S. Bank Nat'l. Ass'n*, 943 F.3d 1071, 1081 (7th Cir. 2019) (noting that only plaintiff's claims under the Illinois Consumer Fraud and Deceptive Business Practices Act – and not her claims under the FDCPA or RESPA – could result in punitive damages); Ind. Code § 24-5-0.5-4(a) (IDCSA allowing recovery of "damages actually suffered" or $500, whichever is greater, and three times the actual damages or $1,000, whichever is greater, for willful violations). The Court **GRANTS** Defendants' Motion to Strike Plaintiffs' punitive damages request and **STRIKES** paragraph H of the Prayer for Relief in the Second Amended Complaint.

In sum, the Court **GRANTS** Defendants' Motion to Strike Certain Allegations from the Complaint, [Filing No. 35], and **STRIKES** the allegations noted above. Plaintiffs' inclusion of the paragraphs in the Second Amended Complaint that are the subject of Defendants' Motion to Strike demonstrates either a blatant disregard for the Court's 26-page May 31, 2024 Order or laziness – neither is acceptable. This course of action has wasted Defendants' time and resulted in the unnecessary expenditure of judicial resources. It is particularly disturbing that Plaintiffs did not even take the time to address Defendants' specific arguments, instead maintaining that their inclusion of the irrelevant paragraphs in the Second Amended Complaint is appropriate and harmless. Perhaps if they had focused on Defendants' arguments, they would have realized that they were well-taken and conceded that their superfluous allegations have no place in the Second Amended Complaint. Instead, they attempted to shift the blame to Defendants by accusing them

of taking an "improper third crack at whittling down [the] operative Complaint."[5] [Filing No. 48 at 2.] The Court cautions Plaintiffs' counsel that this approach comes dangerously close to "unreasonably and vexatiously" protracting this litigation, which could result in the imposition of sanctions. *See* 28 U.S.C. § 1927.

## II.
## MOTION TO STRIKE CLASS ALLEGATIONS

### A. Background

In order to evaluate Plaintiffs' class allegations, the Court first sets forth a summary of Plaintiffs' individual claims. Plaintiffs allege as follows[6]:

### 1. *Defendants' Business and Use of REALServicing*

Ocwen is a financial services company which focuses on servicing subprime loans owed by borrowers who have experienced some manner of delinquency. [Filing No. 33 at 3-4.] In 2018, Ocwen merged its mortgage servicing operations into PHH and began performing its mortgage servicing operations in the name of PHH. [Filing No. 33 at 4.]

When debtors fell behind on their payments, in addition to assessing late fees, Ocwen would obtain ancillary services "which are purportedly designed to protect the lender's interest in the property and permitted by the underlying mortgage and note." [Filing No. 33 at 2.] Without obtaining verification that the services were permitted by the underlying loan or without notifying the Bankruptcy Court, Ocwen has collected and continues to collect reimbursement for these

---

[5] The Court is puzzled regarding Plaintiffs' argument that "discovery may result in Plaintiffs' (sic) seeking to raise additional causes of action stemming from variations of conduct already alleged." [Filing No. 48 at 3.] The allegations that the Court strikes all relate to claims that have already been asserted and dismissed. No discovery on already-dismissed claims will be permitted.

[6] Plaintiffs' allegations are taken as true for purposes of evaluating the Motion to Strike Class Allegations only, and do not constitute findings of fact.

services through alleged escrow deficiencies, payment delinquencies, and unilaterally increased principal balances. [Filing No. 33 at 2.] In order to do so, Ocwen used REALServicing, a "system of record" that helped Ocwen manage its servicing functions and record keeping, despite knowing of the inherent deficiencies in REALServicing's program. [Filing No. 33 at 2.] Ocwen eventually transitioned to using a different program, Black Knight MSP, and transferred approximately one million loans to that servicing platform. [Filing No. 33 at 17-18.] However, the loan transfers "did not include an audit or correction of the payment misapplications, continued collection of unlawful fees and costs, collection of escrow deficiencies, and manufactured states of delinquency experienced by borrowers and debtors such as the Plaintiffs." [Filing No. 33 at 18.]

Ocwen has utilized "Risk Convergence Reports/Spreadsheets" ("RCRs") to track its collection of fees and charges and its improper servicing of loans in bankruptcy generally. [Filing No. 33 at 24.] The RCRs show that Defendants' management knew of their failure to comply with the FDCPA, attributed in part to systemic coding deficiencies with REALServicing. [Filing No. 33 at 24.] Defendants knew that these shortcomings would cause Ocwen "to misapply funds paid during and after the Chapter 13 case, seek to collect upon fees, costs, and expenses for which it had no legal right, report inaccurate information to credit reporting agencies, and fail to properly manage escrow accounts." [Filing No. 33 at 25.]

2.  *Plaintiffs' Chapter 13 Bankruptcies*

a.  Mr. O'Flynn

Mr. O'Flynn owed amounts under a mortgage being serviced by Ocwen, filed a Chapter 13 bankruptcy case on November 6, 2012 in the Bankruptcy Court, and shortly thereafter proposed a Chapter 13 Plan. [Filing No. 33 at 25.] Pursuant to the Chapter 13 Plan, Mr. O'Flynn was to make regular monthly payments to the Chapter 13 Trustee, from which Ocwen would receive a portion

of the amount to maintain the monthly payments it was owed under the mortgage and to address certain arrearage. [Filing No. 33 at 25-26.]

On December 13, 2017, the Chapter 13 Trustee filed a Notice of Final Cure Payment stating that Mr. O'Flynn had completed all payments to Ocwen required under the Chapter 13 Plan. [Filing No. 33 at 26.] Ocwen filed a Response to Notice of Final Cure Payment in which it agreed that Mr. O'Flynn had paid the full amount required to cure the pre-petition default. [Filing No. 33 at 26.] Also in December 2017, Mr. O'Flynn began making timely and adequate monthly installment payments on his mortgage. [Filing No. 33 at 26.] He obtained an Order of Discharge in the Chapter 13 proceeding on February 2, 2018, and his mortgage was to be reinstated according to the original terms with "any amounts alleged to have arisen prior to his bankruptcy…extinguished." [Filing No. 33 at 26-27.] Instead, Mr. O'Flynn "exited bankruptcy with his loan in a manufactured state of delinquency, with a negative escrow balance, and an assortment of fees and costs for which no notice was provided previously." [Filing No. 33 at 27.] Defendants then began "aggressive efforts to collect upon the foregoing amounts including without limitation sending dunning letters, making automated collection calls, and inaccurately reporting the loan to credit reporting agencies." [Filing No. 33 at 27.]

b. Mr. Wilhold

Mr. Wilhold filed for Chapter 13 bankruptcy on May 22, 2014 in the United States Bankruptcy Court for the Southern District of Illinois. [Filing No. 33 at 33.] Shortly thereafter, he proposed a Chapter 13 Plan by which he would make regular monthly payments to the Chapter 13 Trustee of which certain amounts would be forwarded to Ocwen in payment of delinquent amounts Mr. Wilhold owed on his mortgage. [Filing No. 33 at 33.] Mr. Wilhold's bankruptcy attorney filed a Proof of Claim on Ocwen's behalf, stating that Ocwen had a secured claim with an

arrearage amount of $14,905.67.  [Filing No. 33 at 33-34.]  Nearly three years later, Ocwen filed a Proof of Claim asserting a secured claim with an arrearage amount of $13,700.90.  [Filing No. 33 at 34.]

The Chapter 13 Trustee filed a Notice of Final Cure Payment on July 11, 2019, and Ocwen filed a response shortly thereafter in which it agreed that Mr. Wilhold had paid in full the amount required to cure his pre-petition default.  [Filing No. 33 at 34.]  In August 2019, Mr. Wilhold began making timely and adequate post-petition monthly installment payments on his mortgage.  [Filing No. 33 at 34.]  He obtained an Order of Discharge on August 14, 2019.  [Filing No. 33 at 34.]

Mr. Wilhold's mortgage was to be reinstated according to the original terms, and any right of Ocwen to recover amounts alleged to have arisen prior to his bankruptcy were extinguished.  [Filing No. 33 at 34-35.]  However, Mr. Wilhold "exited bankruptcy with a negative escrow balance of approximately $3,963.50 and fees and costs not reflected in the Proof of Claim…nor for which any notice was provided."  [Filing No. 33 at 35.]  Ocwen then "began efforts to collect upon the foregoing amounts and dramatically increased his monthly payment obligation," including "[sending] collection letters and reporting inaccurate information to credit reporting agencies."  [Filing No. 33 at 35.]

c.  Mr. Addison

Mr. Addison filed for Chapter 13 bankruptcy in the Bankruptcy Court on August 21, 2014.  [Filing No. 33 at 37.]  Pursuant to his Chapter 13 Plan, Mr. Addison made regular payments to the Chapter 13 Trustee, from which Ocwen would receive a portion in order to cure arrearages in his mortgage.  [Filing No. 33 at 37.]  On May 1, 2019, Defendants filed a Response to Notice of Final Cure Payment in which they agreed that Mr. Addison had paid the full amount required to cure the

pre-petition default on his mortgage, and an Order of Discharge was entered on June 8, 2019. [Filing No. 33 at 38.]

According to the Chapter 13 Plan, Mr. Addison's mortgage was to be reinstated to its original terms. [Filing No. 33 at 38.] Mr. Addison continued making timely and adequate monthly payments, but following his exit from bankruptcy, Defendants "began efforts to collect upon the foregoing amounts," including "sending dunning letters, making automated collection calls, and reporting inaccurate information to credit reporting agencies." [Filing No. 33 at 38.]

### 3. *Plaintiffs' Individual Claims*

#### a. <u>FDCPA Claim</u>

Plaintiffs allege that Ocwen violated the FDCPA when it "repeatedly misrepresented the character, amount, or legal status of [their] loans." [Filing No. 33 at 46.] They allege that Ocwen misrepresented to them that their loans were delinquent; that they were obligated to pay fees, charges, or costs they did not in fact owe; or that they were obligated to immediately begin making monthly payments to cure alleged escrow deficiency balances. [Filing No. 33 at 46-47.] Plaintiffs allege that Ocwen also violated the FDCPA by inaccurately reporting their loans to credit reporting agencies without noting that the debts had been disputed; when it used false representations, through false loan statements reflecting that the loans were delinquent or had unpaid fees or unpaid escrow deficiencies so as to collect those amounts; by attempting to collect fees and costs for which notice was not provided as required by the Bankruptcy Code; by placing their loans "in a manufactured state of delinquency or default"; and by providing inaccurate payoff statements. [Filing No. 33 at 47.] Additionally, they allege that Ocwen violated the FDCPA by "employing an unfair and unconscionable means to collect upon the subject debt including but not limited to filing for foreclosure, concealing its identity via the use of the PHH trade name, making

16

misrepresentations that Plaintiff[s'] loans were audited or reconciled after bankruptcy or when transferred from REALServicing to Black Knight MSP, and dramatically increasing their monthly escrow payment obligations." [Filing No. 33 at 47.]

b. IDCSA Claim

Plaintiffs allege that Defendants violated the IDCSA by "capitalizing fees and charges they knew to be improper via loan modifications, placing loans in manufactured states of delinquency or default,…failing to perform escrow analysis and calculate proper escrow payments, mismanaging escrow funds, failing to send interest rate and payment change notices, and failing to notify Plaintiffs[ ] of alleged escrow shortages and deficiencies." [Filing No. 33 at 49.] Plaintiffs allege that this conduct "caused borrowers like the Plaintiffs to experience large payment shocks stemming from dramatic increases to their monthly payment obligations." [Filing No. 33 at 50.] They allege that they relied upon Defendants' conduct "in paying amounts they were not legally obligated to pay, proceeding with loan modifications or refinances that capitalized amounts that should not have been, filing tax returns based upon inaccurate documents, and in not formally disputing or further disputing inaccurate amounts and credit reporting." [Filing No. 33 at 50.]

4. *Plaintiffs' Class Claims*

Mr. Wilhold and Mr. Addison bring the FDCPA claim on behalf of the following class:

> All individuals who were debtors in a Chapter 13 bankruptcy proceeding wherein an Order of Discharge was entered from August 27, 2015, to present whose first or second residential mortgage loan was serviced by [Ocwen] during the pendency of their bankruptcy proceedings, [Ocwen] or [PHH] at the time the Order of Discharge was entered, and who thereafter received some form of communication from [Ocwen] or [PHH] regarding any fees, costs, charges, escrow deficiency, or delinquency predating or occurring within sixty (60) days of the Order of Discharge.

[Filing No. 33 at 5 (the "Chapter 13 Class"); Filing No. 33 at 46 (omitting Mr. O'Flynn from the list of Plaintiffs asserting FDCPA Chapter 13 Class claim).]

All Plaintiffs bring the IDCSA claim on behalf of the following class:

All individuals who were debtors in a Chapter 13 bankruptcy proceeding wherein an Order of Discharge was entered in the Southern or Northern Districts of Indiana from August 27, 2015, to present whose first or second residential mortgage loan was serviced by [Ocwen] during the pendency of their bankruptcy proceedings, [Ocwen] or [PHH] at the time the Order of Discharge was entered, and who thereafter paid or contracted to pay any amounts to [Ocwen] or [PHH], whether directly or via refinance or loan modification, associated with any fees, costs, charges, escrow deficiency, increased principal balance, or delinquency predating or occurring within sixty (60) days of the Order of Discharge.

[Filing No. 33 at 5-6 (the "Indiana Subclass"); Filing No. 33 at 48.]

## B.  Standard of Review

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial or scandalous matter."  A motion to strike class allegations, however, is evaluated under Federal Rule of Civil Procedure 23, rather than Rule 12(f). *See Womick v. Kroger Co.*, 2022 WL 1266630, at *2 (S.D. Ill. Apr. 28, 2022) ("District courts within the Seventh Circuit 'evaluate motions to strike class allegations under Rule 23, not Rule 12(f).'") (quoting *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014)). Rule 23 governs class actions, and provides the requirements for class certification.  It also provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).  This decision can be made "even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).  While a defendant seeking to strike class allegations before class discovery has taken place and before a motion for class certification has been filed bears the burden of "proving that the proposed class is not certifiable," *Womick*, 2022 WL 1266630, at *2, the plaintiff is "obliged in its complaint to allege facts bringing the action within the appropriate requirements of [Rule 23]," *Cook Cnty. Coll.*

*Tchrs. Union, Local 1600, Am. Fed'n of Tchrs., AFL-CIO v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972).

In order to certify a class, the Court must first find that the putative class is identifiable. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  Then, the Court must find that the class satisfies the four prerequisites set forth in Rule 23(a), which are that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Class certification is not appropriate unless the named plaintiffs establish all four prerequisites. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982).  If the putative class satisfies the prerequisites of Rule 23(a), the Court must additionally find that it satisfies the requirements set forth in Rule 23(b), which vary depending upon which of three different types of classes is proposed. *Oshana*, 472 F.3d at 513; *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000).  Plaintiffs appear to proceed under Rule 23(b)(3), which requires them to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**C.  Discussion**

In their Motion to Strike Class Allegations, Defendants raise several arguments regarding the scope of Plaintiffs' class definitions and regarding Plaintiffs' inability to satisfy Rule 23(b)(3)'s requirements.  The Court addresses the arguments in turn.

*1. Scope of Plaintiffs' Class Definitions*

a. <u>The Chapter 13 Class</u>

Defendants note that the Chapter 13 Class definition includes all debtors nationwide who received "some form of communication" from Ocwen regarding "any fees, costs, charges, escrow deficiency, or delinquency predating or occurring within sixty (60) days of the Order of Discharge," and that Plaintiffs assert an FDCPA claim on behalf of the Chapter 13 Class related to communications that contain "false representations" regarding class members' loans because the communications represented that certain amounts were due despite them not being collectible and/or not permitted by law due to the members' bankruptcy proceedings.  [Filing No. 36 at 3-4 (emphasis omitted).]  Defendants argue that the Chapter 13 Class definition is overly broad because "not all amounts included on these unidentified 'some form of communication[s]' are alleged to have been actually discharged in the purported class members' Chapter 13 cases," and that some debtors who would be included in the class definition "received perfectly compliant communications that are in some instances even required by several applicable regulations." [Filing No. 36 at 3-4 (emphasis omitted).]  Defendants argue further that the Chapter 13 Class definition "lacks any objective criteria that would render [Ocwen] a debt collector subject to a claim for violating the FDCPA," and that "[w]ithout limiting the class definition to those bankruptcy debtors whose mortgage loans were in default at the time [Ocwen] obtained servicing rights (thereby making [Ocwen] a 'debt collector' under the FDCPA), the class necessarily includes individuals who could not have an FDCPA claim against [Ocwen]."   [Filing No. 36 at 4.] Defendants also argue that "some form of communication" is not specific enough to make the communications sent "in connection with the collection of any debt" or "to collect or attempt to collect any debt," such that the communication would fall within the FDCPA.  [Filing No. 36 at

5.] They assert that the Chapter 13 Class definition is also overbroad because it does not exclude individuals who may have already sought and obtained relief from Ocwen for bankruptcy-related communications and does not limit class members to those who have complied with the notice-and-cure provisions in their mortgages. [Filing No. 36 at 7.] They contend that because the Chapter 13 Class definition "includes people who received communications about fees or amounts even when such communications did not violate any bankruptcy discharge or were not otherwise wrongful," it is overbroad and the class allegations should be stricken. [Filing No. 36 at 5.]

Plaintiffs argue in their response that it is "purely speculative at this point in the proceedings whether any…non-actionable communications were sent within the window of time contained in the class definition," and that "it is just as plausible that all of Ocwen's communications that fall within the class definition were improper and actionable." [Filing No. 45 at 5-6.] Plaintiffs suggest that they can narrow their class definition "to exclude certain types of communications" after discovery and assert that "the fact that it is possible that [the] class definition may need to be narrowed in the future is not a basis for striking their class allegations now." [Filing No. 45 at 6.] As to Defendants' argument that the class definition does not contain any criteria that would render Ocwen a debt collector under the FDCPA, Plaintiffs argue that "this Court has already allowed Plaintiffs' FDCPA claims against Ocwen to proceed after Ocwen's Rule 12 motion," and, again, that Plaintiffs can modify their class definition later, when they move for class certification. [Filing No. 45 at 6.]

In their reply, Defendants contend that the allegations in the Second Amended Complaint "do not support an inference that every communication [Ocwen] sent to every Chapter 13 debtor was somehow actionable," and that "[s]uch speculation cannot be a basis for maintaining a nationwide class action, which would open the doors to discovery of all of the individual[ ] loan

files of all Chapter 13 borrowers nationwide." [Filing No. 52 at 2.]  Defendants note that Plaintiffs

do not address several of their arguments and assert that "[t]he Court should not allow Plaintiffs to

proceed in this case purporting to represent a class of individuals who plainly do not have a claim

against [Ocwen]."  [Filing No. 52 at 2-3.]  Defendants argue that "the sweeping nature" of the

Chapter 13 Class definition is inconsistent with the Court's ruling that narrowed Plaintiffs' claims

and "do[es] not even include the named Plaintiffs themselves." [Filing No. 52 at 3.]  They assert

that Mr. Addison did not respond to the Motion to Strike Class Allegations, that Mr. O'Flynn is not

a Chapter 13 Class representative, and that Mr. Wilhold did not comply with the notice-and-cure

provision in his mortgage and his FDCPA claim was dismissed except to the extent that it is based

on inaccurate credit reporting – but the Chapter 13 Class is not defined to include people who were

the subject of inaccurate credit reporting.  [Filing No. 52 at 3.]

Rule 23 "requires that a class be defined…clearly and based on objective criteria." *Mullins*

*v. Direct Digit., LLC*, 795 F.3d 654, 659 (7th Cir. 2015); Fed. R. Civ. P. 23.  Class definitions are

sufficient if they "identify a particular group, harmed during a particular time frame, in a particular

location, in a particular way." *Mullins*, 795 F.3d at 660.  While motions to strike class allegations

are generally disfavored, "if the complaint clearly shows that a motion to certify the proposed class

would be futile, then a court may resolve the issue of class certification in the context of a motion

to strike." *Russo v. BRP US Inc.*, --- F. Supp.3d ----, 2024 WL 2972701, at *3 (E.D. Wis. June 13,

2024); *see also* 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE

§ 1383 (3d ed. 1998) ("It seems like the sensible approach here is to permit class allegations to be

stricken at the pleading stage – in part or in their entirety – if it is apparent from the pleadings that

the class cannot be certified or that the definition of the class is overbroad.").

The Court acknowledges that the usual practice when a class definition is overbroad is for the Court to narrow the definition. But this case is significantly different from the usual situation. Here, Plaintiffs have made no effort whatsoever to address Defendants' arguments regarding overbreadth, instead simply stating that the problem can be fixed down the road, after discovery. They should have recognized the overbreadth of their class definitions in light of the Court's May 31, 2024 Order and taken steps to narrow those definitions, but they did not. Indeed, the overbreadth issues are numerous.

First, the Chapter 13 Class would include all Chapter 13 debtors nationwide who received any communication from Ocwen regarding "any fees, costs, charges, escrow deficiency, or delinquency" predating or occurring with 60 days of an Order of Discharge. This would include those who received FDCPA-compliant communications regarding their ongoing mortgage responsibilities (which debtors were required to satisfy according to their Chapter 13 plans) and even communications Ocwen was required to send (including periodic loan statements). The Chapter 13 Class would also include debtors who filed for Chapter 13 bankruptcy but who were not in default on loans serviced by Ocwen, taking those communications from Ocwen outside of the FDCPA's purview. These overbreadth issues make striking the class allegations appropriate. *Miles v. Am. Honda Motor Co., Inc.*, 2017 WL 4742193, at *5 (N.D. Ill. Oct. 19, 2017) ("[C]ourts may strike class allegations at the pleading stage when they are facially and inherently deficient.") (quotation and citation omitted).

Additionally, and significantly, although the Chapter 13 Class definition is overbroad, it does not appear to include a named Plaintiff who asserts FDCPA claims on behalf of the Chapter 13 Class. The Chapter 13 Class only asserts an FDCPA claim, with Mr. Wilhold and Mr. Addison as the only Plaintiffs asserting that claim on behalf of the class. [*See* Filing No. 33 at 46.] But Mr.

Addison did not respond to Defendants' Motion to Strike Class Allegations, [*see* Filing No. 45 at 1 ("Plaintiffs, David R. O'Flynn…, Kenneth Novak…, and Donald L. Wilhold…, themselves and on behalf of all others similarly situated, by and through undersigned counsel, submit this Response in Opposition to [the] Motion to Strike Class Allegations.").][7] Accordingly, Mr. Addison has waived any opposition to the Motion to Strike Class Allegations, *Bonte*, 624 F.3d at 466, and the Court **STRIKES** his Chapter 13 Class allegations.

As for Mr. Wilhold, the Court notes that it appears that he did not satisfy the notice-and-cure provision in his mortgage. [*See, e.g.*, Filing No. 17 at 2-3 (Plaintiffs arguing in their response to Defendants' Objection to the Bankruptcy Court's Report and Recommendation that even if Mr. Wilhold failed to comply with the notice-and-cure provision in his mortgage, his RESPA claim should not be dismissed).] That provision required Mr. Wilhold to first notify Ocwen of an alleged breach of a mortgage provision (such as attempting to collect on a discharged debt) before commencing litigation against Ocwen. [*See* Filing No. 2-7 at 20.] Failure to comply with the notice-and-cure provision would bar Mr. Wilhold from asserting an FDCPA claim, to the extent it is based on Ocwen's efforts to collect pursuant to the mortgage. So, his only FDCPA claim would have to be based on Ocwen's inaccurate reporting to credit reporting agencies.[8] But significantly,

---

[7] To the extent the reference to Mr. Novak is a typographical error (since the Court clearly dismissed all of Mr. Novak's claims in its May 31, 2024 Order) and Plaintiffs meant to refer to Mr. Addison instead, they could have filed a motion to correct their response – especially after reviewing Defendants' reply, which points out the discrepancy. They did not do so, leading the Court to presume that they did not intend their response to be on behalf of Mr. Addison.

[8] Defendants state in their reply brief that Mr. Wilhold's FDCPA claim was dismissed except to the extent that it is based on inaccurate credit reporting. [Filing No. 52 at 3.] The Court did not explicitly reach that holding because it was not clearly reached by the Bankruptcy Court in its Report and Recommendation and because it was not addressed in Defendants' Objection, [*see* Filing No. 15; Filing No. 16; Filing No. 24], but acknowledges that if Mr. Wilhold did not comply with the notice-and-cure provision of his mortgage, he can only bring an FDCPA claim based on inaccurate reporting to credit reporting agencies.

the Chapter 13 Class definition does not refer in any way to inaccurate reporting to credit reporting agencies, and focuses instead only on communications from Ocwen to the debtor.  Mr. Wilhold cannot represent individuals whose FDCPA claims rest only on those communications.

In short, the Chapter 13 Class is overbroad, Mr. Addison has waived any argument that the Chapter 13 Class's allegations should not be stricken, and neither Mr. Addison nor Mr. Wilhold can represent the Chapter 13 Class as it is currently defined.

b.  The Indiana Subclass

In support of their Motion to Strike Class Allegations, Defendants argue that the Court has dismissed the IDCSA claim to the extent it is based on violations of the Bankruptcy Code, yet the Indiana Subclass definition includes debtors who paid charges that accrued prior to or just after their discharge orders and "includes no criteria to exclude claims based on charges that violated the Bankruptcy Code."  [Filing No. 36 at 6.]  They contend that the Indiana Subclass definition does not "include any criteria to otherwise bring class members' claims within the scope of the IDCSA based on conduct that did not violate the Bankruptcy Code."  [Filing No. 36 at 6.] Defendants also assert many of the same overbreadth arguments that they set forth in connection with the Chapter 13 Class, and argue that the IDCSA claim is based on allegations that "[Ocwen's] conduct was 'unfair, deceptive, and misleading' because it 'fail[ed] to perform escrow analysis and calculate proper escrow payments,' 'fail[ed] to send interest rate and payment change notices,' [and] 'report[ed] inaccurate credit information,' among other things," but that "Plaintiffs do not allege that every single amount paid by every purported class member was either not actually due or was the subject of some 'unfair, deceptive, and misleading' act by [Ocwen]."  [Filing No. 36 at 6.]

Plaintiffs argue in their response that the definition's inclusion of bankruptcy-related conduct and individuals who were not injured "can be addressed after discovery, when both the

Plaintiffs and the Court have the benefit of evidence to craft an appropriately narrow class definition." [Filing No. 45 at 6.] They assert that "[i]f this Court disagrees with Plaintiffs [after discovery], then it can narrow the class definition itself." [Filing No. 45 at 7.]

In their reply, Defendants argue that Plaintiffs do not disagree with the assertion that the Indiana Subclass includes bankruptcy-related conduct that the Court has found to be "an unviable theory of recovery on [Ocwen's] motion to dismiss," that "this Court already ruled that Plaintiffs cannot maintain a state-law claim based on alleged violations of the Bankruptcy Code," and that "Plaintiffs are not entitled to take discovery on a theory that has been dismissed with prejudice." [Filing No. 52 at 4.]

Plaintiffs' Indiana Subclass definition again reflects their refusal to accept the Court's May 31, 2024 rulings narrowing their claims. The only IDCSA claims that remain are those asserted by Mr. O'Flynn and Mr. Addison and that are not based on conduct that violated the Bankruptcy Code or the FCRA. [*See* Filing No. 24 at 26.] Yet the Indiana Subclass definition focuses on those who took certain actions within 60 days of receiving their Chapter 13 discharge order. Since their IDCSA claims cannot be based on violations of the Bankruptcy Code, this criteria no longer is relevant to their IDCSA claims. Indeed, the Indiana Subclass definition in the Second Amended Complaint is the same as that set forth in the First Amended Complaint. [*Cf.* Filing No. 19 at 31 and Filing No. 33 at 5-6.] This exhibits either a lack of attention to detail or a lack of effort on the part of Plaintiffs' counsel – neither of which is acceptable. Because the Indiana Subclass definition does not reflect the Court's May 31, 2024 ruling that the IDCSA claims cannot be based on

violations of the Bankruptcy Code, the definition is overbroad since it primarily includes individuals who do not have viable IDCSA claims.[9]

In sum, while motions to strike class allegations for overbreadth are often denied in favor of narrowing the definition after class discovery, the circumstances of this case – including Plaintiffs' failure to tailor their Chapter 13 Class or Indiana Subclass definitions in light of the Court's May 31, 2024 rulings, which has resulted in definitions that do not accurately reflect the claims that are left in this litigation – warrant **STRIKING** the class allegations due to overbreadth.

### 2. *Individualized Issues of Law and Fact*

Defendants argue in support of their motion that Plaintiffs cannot satisfy Rule 23(b) because "the [Second Amended] Complaint demonstrates that individualized questions of law or fact will invariably predominate over common ones." [Filing No. 36 at 8.] They assert that "[d]iscovery as to every individual purported class member would be required to see if they received communications, whether those communications said anything about the unspecified 'fees, costs, charges, escrow deficienc[ies], or delinquenc[ies]' referenced in the class definition, the propriety of any of those amounts, and/or whether the borrower paid amounts that violated the terms of his or her individual bankruptcy plan and discharge order." [Filing No. 36 at 9.] They note that discovery would also be needed to determine whether, in light of the communications each class member received, Ocwen was a "debt collector" for purposes of the FDCPA. [Filing No. 36 at 9.] Defendants argue that, for example, adjudicating Mr. Addison's allegations that Ocwen's proof of claim filed in his Chapter 13 bankruptcy was incorrect, that Ocwen sent him an escrow statement which contained misrepresentations, and that he relied on those

---

[9] The Court notes again that Mr. Addison did not respond to the Motion to Strike Class Allegations, so has waived any arguments to the contrary. *Bonte*, 624 F.3d at 466. Consequently, the Court **STRIKES** Mr. Addison's class IDCSA claims.

misrepresentations would "involve a specific analysis of [his] loan transaction, the amounts due, the 'accuracy' of the amounts claimed, and subjective information about whether [Ocwen's] communications were 'misrepresentations' or 'fraudulent.'" [Filing No. 36 at 9.]  They also note that "individualized issues would need to be examined as to each class member's mortgage contract to determine [whether] it contains a [notice-and-cure] provision similar to…[Mr.] Wilhold's mortgage[ ], which preclude[s] [his] claims in part both individually and as [a] class representative[ ]." [Filing No. 36 at 10.]  Defendants assert that these individualized issues lead to the conclusion that a class action is not a superior method of adjudicating the controversy.  [Filing No. 36 at 11-12.]

Plaintiffs argue in response that "[i]t is practically axiomatic that in any class action there will need to be some individualized fact-finding in order to determine who the class members are," but that "does not mean that those individual issues predominate over common issues; it may be that there is no substantive disagreement between the parties concerning the identities of the class members once an analysis of the relevant records is complete." [Filing No. 45 at 7-8.]  They assert that "[t]he fact that the parties will need to do the work to present this Court with…fully-fleshed out class certification briefs is not a reason to strike the class allegations." [Filing No. 45 at 8.] Plaintiffs also argue that class treatment is superior to individual cases.  [Filing No. 45 at 8.]

In their reply, Defendants argue that "Plaintiffs do not dispute that [an] individualized review of bankruptcy plans" would be required to adjudicate the claims, but rather "only conclusively argue that that individualized review and the issues related to it do not predominate." [Filing No. 52 at 5.]

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 803 (7th Cir. 2013)

(quotation and citation omitted).  "[I]t is not bean counting," and "common issues need only predominate, not outnumber individual issues." *Id.* (quotation and citation omitted).  In evaluating both predominance and the superiority of a class action, Rule 23(b)(3) instructs the Court to consider:

> (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

This is not a case where a plaintiff seeks to represent a class of individuals who all received the same form letter from a creditor that they contend violated the FDCPA.  *See, e.g.*, *Foley v. Student Assistance Corp.*, 336 F.R.D. 445, 450-51 (E.D. Wis. 2020) (finding that common issues predominated over individualized ones where "the issue is whether defendant violated the FDCPA by sending form letters that sought email addresses of purported class members from third parties").  Rather, for the Chapter 13 Class, the Court would need to evaluate the nature of the communication from Ocwen to the class member, determine whether Ocwen was acting within the scope of the FDCPA, determine whether Ocwen was attempting to collect debts that were actually owed, and determine whether any payments violated the terms of the class member's Chapter 13 Plan or discharge order.  Many of these same determinations would be needed for the IDCSA claims – such as determining whether amounts Ocwen was attempting to collect were actually owed, whether each class member's account was delinquent, and whether Ocwen's statements were accurate – in addition to examining each class member's mortgage for notice-and-cure provisions.

29

And the common questions of fact that Plaintiffs set forth in the Second Amended Complaint cannot be answered without engaging in these individualized inquiries first.  [*See* Filing No. 33 at 6-8 (Plaintiffs alleging that common questions of fact exist including, for example, "[t]he frequency at which debtors with loans serviced by Ocwen have exited successfully completed Chapter 13 bankruptcy proceedings only to still be face[]d with some instance of general delinquency in relation to fees, charges, costs, negative escrow accounts, negative suspense balances, or an increased principal balance[ ]" and "[w]hether Defendants have made knowing false or incomplete statements to bankruptcy courts or filed documents known to likely contain material inaccuracies").]

The Court finds that these individualized issues, which must be answered particularly in light of the overbroad class definitions in order to determine whether Defendants are liable under the FDCPA or the IDCSA, predominate over any common ones.  *See Jacks v. DirectSat USA, LLC*, 2024 WL 4380256, at *4 (7th Cir. Oct. 3, 2024) (common questions "must resolve an issue that is central to the validity of the claims in 'one stroke'"); *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 415 (N..D. Ill. 2012) ("Predominance is not satisfied where liability determinations are individual and fact-intensive.").   The Court **STRIKES** Plaintiffs' class allegations for this independent reason.[10]

In sum, Plaintiffs' Chapter 13 Class and Indiana Subclass definitions are overbroad, include individuals who would not have viable claims, and would require the Court to engage in a highly-individualized analysis of each class member's circumstances to determine liability.  Moreover, while striking class allegations is not always appropriate, the Court finds that the circumstances of

---

[10] Because the Court finds that common issues do not predominate over individualized ones, it need not consider whether a class action is a superior method of adjudicating the controversy but notes that it would be difficult, if not impossible, to show the latter in the absence of the former.

this case warrant doing so in light of the fact that Plaintiffs did not even attempt to narrow their class definitions based on the Court's May 31, 2024 rulings and have made no effort to respond to Defendants' specific arguments or to alleviate the Court's concerns. The Court **GRANTS** Defendants' Motion to Strike Class Allegations, [Filing No. 36], and **STRIKES** all class allegations in the Second Amended Complaint.

### III.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Strike Certain Allegations from the Complaint, [35], **GRANTS** Defendants' Motion to Strike Class Allegations, [36], and **STRIKES** the following allegations from the Second Amended Complaint, [33]:

- Paragraphs that relate to Mr. Novak: 147-185, 252, 261, 269 (reference to "Novak" only), and 282;

- Paragraphs that relate to a "curable" deceptive act: 290 (the reference to "both curable and" only) and 291;

- Paragraphs that relate to the IDCSA claims being based on violations of the Bankruptcy Code or the FCRA: 293 ("collecting or seeking to collect improper and inflated fees and charges" and "reporting inaccurate credit information" only) and 297;

- Paragraphs that relate to the relationship between AltiSource and Ocwen: 3 ("To obtain these services, Ocwen historically funneled all of the work through AltiSource who then ordered the services using a network of third-party vendors" only), 5 ("a program maintained and provided by AltiSource" only), 39-74, 80, and 82-86;

- Prayer for relief, ¶ H (requesting punitive damages); and

- All class allegations.

The Court **ORDERS** Plaintiffs to file a Third Amended Complaint which reflects the Court's rulings within **7 days** of this Order. The Third Amended Complaint must reflect respect for the Court's May 31, 2024 Order and this Order, and include only allegations that support claims

the Court has deemed can proceed. It is Plaintiffs' obligation to focus their amended complaint

on claims that the Court – through the expenditure of considerable time and effort – has found are

viable. The Court warns Plaintiffs that continued disrespect for Court orders and, specifically,

a failure to comply with the May 31, 2024 Order and this Order, will result in the dismissal of

this case. *See Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 192 (7th Cir. 2011) ("[W]e

encourage district courts to provide an explicit warning before…dismissal [as a sanction] is

ordered."); Fed. R. Civ. P. 16(f)(1)(C) (court may dismiss case as sanction for failing to obey a

pretrial order).

Date: 10/23/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**